# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## OCTOBER TERM, 1863.

### FRANKLIN *v.* STATE BOARD OF EXAMINERS.

THE Constitution does not impose any limitation upon the amount of State indebtedness which may be created by the Legislature in case of war, to repel invasion or suppress insurrection.

The political department of the State Government is the sole judge of the existence of war or insurrection; and when it declares either of these emergencies to exist, its action is not subject to review, or liable to be controlled by the judicial department of the State.

APPEAL from the Sixth Judicial District, Sacramento County.

On the twenty-first day of August, 1863, John Franklin filed his petition, in which he set forth that on the twenty-fifth day of November, 1861, he became an enlisted soldier in Company H of the second regiment of cavalry, California Volunteers, and on the twenty-fifth day of July, 1863, was honorably discharged from service, and that on the eighteenth day of August, 1863, he requested the Board of State Examiners to audit and allow his claim for five dollars per month during his period of service under the Act of April

27th, 1863, and that said board refused to audit and allow his claim.

The District Court denied the application for a *mandamus*, and from this judgment the petitioner appealed.

*George Cadwalader*, for Appellant.

In case of war, invasion, or insurrection, there is no limitation on the power of the Legislature to create a State debt exceeding $300,000. (*The People* v. *Rogers*, 13 Cal. 159; *Cal. State Telegraph Co.* v. *Alta Telegraph Co.* 22 Id. 398; *Nogues* v. *Douglass*, 7 Id. 65.)

The recognition by the Legislature of either war, invasion, or insurrection, is a determination of a question of fact solely and exclusively confided in the Legislature. (*Houston* v. *Moore*, 5 Wheat. 1; *Martin* v. *Mott*, 12 Id. 29; *Luther* v. *Borden*, 7 How. 1.)

*F. M. Pixley*, Attorney-General, for Respondents.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring, and COPE, C. J. concurring specially.

This is an application for a *mandamus* to compel the defendants to audit and allow a claim to the bounty of five dollars per month allowed by the Act of April 27th, 1863, entitled "An Act for the Relief of the Enlisted Men of the California Volunteers in the Service of the United States." The Court below refused the *mandamus*, and the plaintiff appeals.

The respondents contend that the act in question violates the eighth article of the State Constitution, and is therefore void. The portion of the article applicable to the present case reads as follows: "The Legislature shall not in any manner create any debt or debts, liability or liabilities, which shall singly or in the aggregate with any previous debts or liabilities, exceed the sum of $300,000, except in case of war, to repel invasion or suppress insurrection," etc., etc. The act in question provides for the creation of a debt which may amount to $600,000; and it is admitted that the indebtedness of the State, at the time of the passage of the law, greatly exceeded

the constitutional limit of $300,000. These facts would render the act invalid, unless it is saved by the exception in Art. 8.

It is contended by the appellant, that the present condition of the nation is evidence that the exigency exists provided for by the exception, and, therefore, the act is valid ; while, on the other hand, the respondents insist that there is nothing in the condition of our National affairs which authorizes the law. In arguing this question, various constructions of this exception have been suggested. One is, that the power of the Legislature to create debts is unlimited only in cases where a war exists in the State, or where there is an invasion or threatened invasion of the State ; or where there is an insurrection within its boundaries. Another is, that it applies in all cases where a war or insurrection exists in any part of the United States, or there is an invasion or threatened invasion of any territory within the National jurisdiction. It is also claimed that it applies only to repelling invasions of the State, or suppressing insurrections within its bounds in time of war. We do not deem it necessary to investigate this question, or to attempt to give an exact or definite construction of the terms thus used in the Constitution. The evident intention was to impose limitations upon the general power of the Legislature to create debts, leaving them free, however, from such restrictions in great emergencies caused by a war, an invasion, or an insurrection. In such cases, the Legislature should be left free to exercise their judgment and discretion upon the subject, answerable alone to the people for any abuse of the power. The existence of the emergency calling for the exercise of the power is purely a political question, and the Legislature, as the body in whom the political power of the State is vested, are the sole judges as to the existence of such emergency. It is the exercise of a purely political power, upon a political subject, in no manner of a judicial character, and it is not, therefore, subject to review, or liable to be controlled by the judicial department of the State. The Legislature is, therefore, the proper judge of the construction to be given to the Constitution upon this subject.

In the exercise of their rightful authority, they have decided that the exigency has arisen demanding the exercise of the power, and they have directly declared that the object of the law and the debt

created by it, is "to aid in repelling invasion, suppressing insurrection, enforcing the laws, and preserving and protecting the public property;" and this decision cannot be reviewed or set aside by this Court.

In the case of *Luther* v. *Borden* (7 How. U. S. 1), it was held that the decision and determination of matters of a political character by the Executive or Legislative departments of the Government, was binding on every other department, and could not be questioned by a judicial tribunal. The dangers and difficulties which would grow out of the adoption of a contrary rule are there clearly and ably pointed out. The National Constitution declares that Congress shall have power "to provide for calling out the militia to execute the laws of the Union, suppress insurrections, and repel invasions;" and Congress, by the Act of 1795, provided "that whenever the United States shall be invaded, or be in danger of invasion from any foreign nation or Indian tribe, it shall be lawful for the President of the United States to call forth such number of the militia of the State or States most convenient to the place of danger as he may judge necessary to repel such invasion." It was held that this power to provide for repelling invasions includes the power to provide against the attempt and danger of invasion, as the necessary and proper means to effectuate the object. It was also held that although the power is in its terms limited and confined to cases of actual invasion, or of imminent danger of invasion, yet the authority to decide whether the exigency has arisen belongs exclusively to the President, and that his decision is conclusive upon all other persons. There is no provision for any appeal from the decision of the President. (*Martin* v. *Mott,* 12 Wheat. 19.)

But even if it was necessary for this Court to decide whether or not war exists in the country, and that the emergency had arisen justifying the exercise of the power, there is sufficient in the condition of our National affairs to sustain the position that the emergency existed which justified the Legislature in passing the law. It is a matter of public history that eleven of the State Governments have organized a new confederacy of States, which they have called the "Confederate States of America," and under this new but unconstitutional organization they have levied war against the United

Franklin *v.* State Board of Examiners.

States, and for nearly three years have prosecuted direct and open hostilities against the National and many of the State Governments, with all the means in their power. These hostilities constitute, both in law and fact, war. The fact that an insurrection exists, and that these hostilities are conducted by persons owing allegiance to the National Government, who are therefore rebels and traitors, renders it none the less a war. One part of the constitutional definition of treason is, that it consists " in levying war against them," that is, the United States. It is none the less treason because the rebels have levied war under a pretended national organization. A traitor cannot escape the punishment of his crime by adding thereto the offense of creating or acting under a governmental organization, and committing his treasonable acts under its pretended authority. Still, however this may be, the hostilities in which the nation is engaged are none the less war, whether carried on against traitors or not.

The fact that the rebels have never invaded this State can make no difference ; for they are waging war against the nation, of which the State is a component part, and which we are equally interested, with each and all the other States, in sustaining. Whatever affects any one part of the nation equally affects us. The success or defeat of the National Government is equally our success and defeat. It is therefore the duty of the State to aid the National Government, when necessary, to the full extent of its means and ability. The Legislature is the sole judge of this necessity, and the extent to which aid should be rendered.

Not only does the public history of the times establish the fact of the existence of war, but various acts of Congress providing the means for prosecuting it, and the proclamations of the President of the United States, especially those of September 22d, 1862, and January 1st, 1863, recognize the existence of war, and prescribe rules regulating it. (12 U. S. Stat. at Large, 1267–1269.)

Our conclusion is, that the law in question is constitutional, and that the Court below erred in refusing the *mandamus.* The order to that effect is therefore reversed, and the Court below is directed to order a *mandamus* to issue, as prayed for by the plaintiff.

COPE, C. J.—I concur in the judgment, upon the ground that the exigencies contemplated by the Constitution are matters of the existence of which the Legislature is the sole judge.