[Sac. No. 525.   In Bank. — August 2, 1901.]

## JOHN O. REIS, Respondent, v. STATE OF CALIFORNIA, Appellant.

INDIAN WAR BONDS — ACTION UPON COUPONS — LIABILITY OF STATE. — In an action upon coupons for interest on Indian war bonds, issued by the state under the act of May 3, 1852, in which the state agreed that it would, after ten years, pay all the bonds, and interest thereon, if during that period the United States did not appropriate or donate a sufficient amount to pay them, where it appears that the United States never appropriated a sufficient amount, and that the interest sued upon is threefold greater than the unexpended sum appropriated that at one time remained in the treasury of the United States applicable to bonds and interest, and that the United States refused to appropriate the interest accruing after January 1, 1854, which was sued upon, the state is bound by its contract, and is liable to judgment for the amount of the interest sued upon.

ID. — DELAY IN PAYMENT OF FEDERAL APPROPRIATION. — The fact that there was delay in payment of the Federal appropriation, whereby it was tied up for two years, cannot affect the liability of the state on its contract to pay interest not covered by the appropriation.

ID. — AMOUNT OF DEBT CREATED — CONSTITUTIONAL LAW — ESTOPPEL OF STATE — CONCLUSIVE RECITALS OF WAR BOND ACT. — The provisions of article VIII of the constitution of 1849, forbidding the legislature to create any debt exceeding the sum of three hundred thousand dollars, " except in case of war, to repel invasion, or suppress insurrection," do not affect the validity of the act of 1852 for the issuance of Indian war bonds, the recitals in which, to the effect that a state of war or insurrection existed when the expeditions against the Indians were sent out, estop the state from denying that fact.   The recitals in a public statute are conclusive evidence of the facts recited, for the purpose of carrying the statute into effect.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial.   A. P. Catlin, Judge.

W. F. Fitzgerald, ex-Attorney-General, and W. H. Anderson, Assistant, and Tirey L. Ford, Attorney-General, and George A. Sturtevant, Deputy Attorney-General, for Appellant.

Freeman & Bates, George E. Bates, and James D. Thornton, for Respondent.

HENSHAW, J.—This action was prosecuted to recover against the state a judgment for the amount of certain coupons detached from bonds issued under the act of May 3, 1852 (Stats. 1852, p. 59), and known as "the Indian war bonds." The act is entitled "An act authorizing the treasurer of the state to issue bonds for the payment of the expenses of the Mariposa, Second El Dorado, Utah, Los Angeles, Clear Lake, Klamath and Trinity, and Monterey expeditions against the Indians."

By the first section it is provided, "A sum not exceeding six hundred thousand dollars is hereby appropriated and set apart as an additional war fund, payable in ten years, out of any moneys which may be appropriated by Congress to defray the expenses incurred by the state of California, and interest thereon at the rate of seven per cent per annum, in the suppression of Indian hostilities, or out of the proceeds of the sale of any public lands which may be donated or set aside by Congress for that purpose; and should no such appropriation or donation be made, or if an amount sufficient should not be appropriated or donated within the said ten years, then the bonds authorized to be issued by this act shall be good and valid claims against the state, and shall be paid out of any moneys in the treasury, not otherwise appropriated, to pay the expenses of the expeditions mentioned in this act."

The findings of the court set forth with clearness the history of the matter, and are here quoted at length: "That, pursuant to the act of the legislature of the state of California approved May 3, 1852, this state did issue its bonds for the sum of $600,000, as therein provided, which bonds were in liquidation of the indebtedness owing by this state for expenses it had necessarily incurred in certain expeditions undertaken by it against the Indians, which expeditions were named in said act; that all of the bonds and coupons described in plaintiff's complaint are part of the bonds issued as aforesaid; that on August 5, 1854, the Congress of the United States passed an act, which was approved on that day, wherein and whereby the Secretary of War was authorized and directed to examine into and ascertain the amount of expenses incurred and now actually paid by the state of California, in the suppression of Indian hostilities within said state, prior to January 1, 1854, and that

amount, when so ascertained, should be paid into the treasury of the state of California, provided said sum should not exceed $924,259.65; that the Secretary of War refused to accept the state records of this state, showing the ‘bonds issued by it in liquidation of claims growing out of Indian hostilities, as sufficient evidence of the demands, and refused to pay into the state treasury of this state said sum of $924,259.65, or any part thereof, until he had received, examined, and approved the original vouchers and demands for which the bonds were issued; that the amount of bonds issued by the state of California in liquidation of valid claims existing against it for expenses it had incurred in the suppression of Indian hostilities within this state is and was as follows: —

| | |
|---|---:|
| Bonds issued under act of February 15, 1851 | $200,000 |
| Bonds issued under act of May 3, 1852 | 600,000 |
| Bonds issued under act of April 16, 1853 | 23,000 |
| Bonds issued under act of April 16, 1853 | 2,500 |
| Bonds issued under act of May 18, 1853 | 23,000 |
| Total | $848,500 |

These bonds bore interest as follows: The two hundred thousand dollars of bonds issued under the act of 1851, aforesaid, bore interest at the rate of twelve per cent per annum from September 1, 1851; all the other bonds bore interest from January 1, 1852, at the rate of seven per cent per annum. The amount owing and unpaid by this state on January 1, 1854, on account of its Indian war debts aforesaid, with interest to said date, was the sum of $995,290; the amount of the same debts owing and unpaid on August 5, 1854, with interest to that date, was the sum of $1,036,634.13; the amount of the same debts owing and unpaid on September 1, 1856, with interest to that date, was the sum of $1,180,243.32. That on August 18, 1856, the Congress of the United States passed an act, approved on that date, wherein and whereby the Secretary of War was authorized and directed to pay to the holders of the war bonds of the state of California the amount of the Congressional appropriation of August 5, 1854, as such bonded indebtedness existed on January 1, 1854, and to return to the bondholders such overdue coupons as were not paid by the United States; that said payments were to be made subject to certain provisions in said act provided, and all of said pro-

visions were complied with; that, pursuant to said act of Congress, there was, on or about September 1, 1856, presented to the Secretary of War, and paid by him, state bonds dated prior to January 1, 1854, all issued on account of Indian war indebtedness of this state, under the acts of its legislature hereinbefore mentioned, to the amount of $914,076.02, and said payment left in the treasury of the United States an unexpended balance of said appropriation of $10,183.63; that thereafter Congress passed the following acts, re-appropriating, in whole or in part, the unexpended balance of said appropriation: act approved June 23, 1860; act approved July 25, 1868; that no part of the Congressional appropriation aforesaid was made for nor applicable to the payment of any coupons set forth in plaintiff's complaint herein; that Congress never made any appropriation for the payment of the indebtedness incurred by this state in the suppression of Indian hostilities in this state, other than the appropriation of $924,259.65, made by the act of Congress of August 5, 1854, except that it, at various times, as set forth in defendant's answer, re-appropriated lapsed portions of said original appropriations; that the amount of said Congressional appropriation was not sufficient, when made, nor at any subsequent time, to pay the bonds created by the state act of May 3, 1852, and the prior act of February 15, 1851, with the interest accruing on the same."

The amount of coupons sued upon in this action aggregates some $33,900. Plaintiff was awarded judgment in the sum of $33,552, from which judgment and from the order denying its motion for a new trial the state appealed. As to the foregoing findings it is sufficient to say that they derive full support from the evidence.

The principal reliance of defendant, in support of its appeal, is upon the case of *Sawyer* v. *Colgan,* 102 Cal. 283, or rather upon the application which it seeks to make of the decision in that case to the facts in the case at bar. *Sawyer* v. *Colgan,* 102 Cal. 283, was a petition for a writ of mandate to compel the controller of the state to issue his warrant for the amount claimed to be due upon certain coupons detached, as were the ones in the case at bar, from Indian war bonds. The coupons there, like those in the present case, were for interest subsequent to January 1, 1854. In the Colgan case it was shown

that there was about ten thousand dollars of the appropriation made by the United States government still remaining in the fund. The amount of the coupons in suit in the Colgan case was very considerably less than this sum of ten thousand dollars, and in denying to the petitioner the extraordinary remedy of mandate this court said: "It is not sufficient answer to say that this balance was insufficient to pay all the outstanding bonds and coupons. It is enough to know that petitioner's bonds and coupons would have been paid if they had been presented at the proper time." The conclusion was reached and expressed, therefore, that the state of California never became liable to pay on any of the coupons in suit. This conclusion is predicated upon the reasoning that it was shown that there was money, appropriated by the United States, available for the purpose of the payment of the coupons in suit, and sufficient for that purpose, and that therefore the condition upon which the liability of the state to pay these debts became fixed had never arisen. In the case at bar it is shown that the United States never appropriated an amount sufficient to pay the whole of the debt of the state evidenced by these bonds, and that the amount in suit is threefold greater than the unexpended sum that at one time remained in the treasury of the United States. Accepting, then, to its fullest extent the determination of *Sawyer* v. *Colgan*, 102 Cal. 283, as to when and under what circumstances the state became liable for the payment of these debts, the proposition is established in this case that the contingency had arisen. The facts of the matter are simply these: The state's contract with its bondholders was to pay them the face of their bonds, and the face of the interest coupons, within or at the expiration of ten years, if, during that period, the United States did not itself discharge the state from its liability, by making full payment in its behalf. The bondholders' contract was with the state, not with the United States, and the state was to be exonerated from its liability to them only in the event that the United States made full payment. The contract of the state with its bondholders was, not that it would pay interest upon these bonds until 1854, or until 1855, or until 1856, but that it would pay them interest (not exceeding ten years) up to the time when the bonds themselves were extinguished by payment. When the United States came to lift the burden of the

state, it did not undertake to do so in accordance with the terms of the state's contract with its bondholders. The United States said, as it had a perfect right to say, "We will pay, not the whole debt of the state of California, but we will pay a sum not to exceed $924,259.65 toward the extinguishment of this debt. Moreover, we will not turn this money into the treasury of the state of California, and make the state our disbursing agent: We shall investigate the claims against the state, and pay such as we consider just, and notwithstanding the fact that no dollar of this money which we have thus appropriated is available for the payment of these debts until the year 1856, we will decline to allow or to pay any interest upon the debts of the state accruing after January 1, 1854."

This, as I have said, was what the United States government determined to do, and did do. It had a perfect right so to decree, precisely as it had the right to refuse to pay anything at all, or to pay as much or as little as suited its view. But if the United States had in fact refused to appropriate any money, or had only appropriated a grossly inadequate sum, no one, I take it, would question that the liability of the state to make full payment, in accordance with the terms of its contract with its bondholders, had become absolute. And so here, if the United States did not by payment extinguish the liability of the state to its bondholders in accordance with the state's contract with them, by every consideration of equity, as well as of strict law, the state is bound so to do. The fact that the United States said that it would pay no interest after 1854 did not, and could not, operate to effect, modify, vary, or change in the slightest the contract of the state with its bondholders, and by that contract the state obligated itself to pay principal and interest upon these bonds, unless the United States did so in its place.

The facts found in *Sawyer* v. *Colgan*, 102 Cal. 283, to the effect that there was a surplus in the treasury of the United States available for the payment of the coupons there in suit justified the court in refusing the extraordinary remedy of mandate, upon this showing, that moneys from another source, for the extinguishment of petitioner's claim, were first to be made use of; but appellant would here seek to extend that declaration, and apply it as the defense to any and every bond

and coupon now due, owing, and unpaid. In other words, defendant's proposition is this: "There were ten thousand dollars not drawn from the funds appropriated by the United States. It makes no difference that the United States would have refused payment upon any of these bonds or coupons out of that fund because they were issued or accrued after January 1, 1854; it makes no difference, therefore, whether the state's creditor could have obtained a dollar of this money; it makes no difference that the aggregate liability of the state was several hundred thousand dollars, and there was at the most but ten thousand dollars with which to pay it: the fact is, and this court should so declare it, that because each one of these coupons and each one of these bonds was for a sum vastly less than ten thousand dollars, any one of these individual holders of them *might* have been paid, and therefore the state is exonerated." This amounts to saying that some two or three hundred thousand dollars of indebtedness could legally be extinguished by a treasury fund of ten thousand dollars, and this, without the expenditure of a dollar of that fund. This, certainly, is a most startling new way to pay old debts. But, to the contrary, we hold, upon every principle of strict law, as well as of justice, that the state is bound by its own contract with its own bondholders according to the terms and tenor of its contract, and that upon a showing such as is here made, that the United States did not appropriate enough money to pay the state's bondholders in accordance with the terms of their contract with the state, the state's liability has become absolute. It is urged that it was through no fault on the part of the state or its officers that the Federal appropriation was tied up for more than two years, and that therefore the state should not be held for the interest accruing after January 1, 1854. To this it may be answered, if answer is needed, that it would have been no fault of the state or its officers if the United States had never appropriated a dollar. Yet would any one contend, under such circumstances, that the state was to go free? It was surely no fault of the bondholders. They were no more able than the state to control the machinery of the United States government, and they have the right to demand that the state shall fulfill its contract with them, whether in the matter of the Federal appropriation the state be in fault or not.

It is further urged against this judgment that the act of May, 1852, under which these bonds were issued, was itself unconstitutional, in attempting to create an indebtedness against the state in excess of three hundred thousand dollars. In this, reliance is had upon article VIII of the constitution of 1849. By that article the legislature is forbidden to create any debt exceeding the sum of three hundred thousand dollars, "except in case of war, to repel invasion, or suppress insurrection," but the very act, in its recitals, declared, in effect, that a state of war or insurrection existed when the expeditions against the Indians were sent out, and the state is estopped from urging this defense, by its solemn declaration in the act itself. Section 1903 of the Code of Civil Procedure declares that "the recitals in a public statute are conclusive evidence of the facts recited, for the purpose of carrying it into effect."

Some of the rulings are complained of in the improper admission of evidence. It is unnecessary to consider them, for the admitted evidence merely made against the defense which the state advanced, and which we have declared to be untenable, — viz., that the ten thousand dollars surplus extinguished the state's liability for the whole debt. The admission of this evidence, therefore, could not have injured appellant.

The judgment and order appealed from are therefore affirmed.

Temple, J., Harrison, J., Garoutte, J., and McFarland, J., concurred.