# A. GUSTAFSON v. WALTER F. RHINOW, AS ADJUTANT GENERAL OF THE STATE OF MINNESOTA AND OTHERS.[1]

January 9, 1920.

No. 21,725.

**Constitution — Soldiers' Bonus Law valid.**

1. Under section 7 of article 9 of the Constitution there is no limitation of the amount of debt which may be contracted by the state "in time of war, to repel invasion or suppress insurrection." The act of September 22, 1919 (Laws 1919, Ex. Sess. c. 49), appropriating $20,000,000 for the payment of additional compensation to those serving in the forces of the United States in the war with Germany is authorized by said section and is constitutional, and the debt created by the act is a direct obligation of the state.

**Same — debt for a public purpose.**

2. The debt created by the act is for a public purpose.

**Soldiers of allied armies not beneficiaries.**

3. The act does not include among its beneficiaries residents of Minnesota enlisted in the associated forces, but not enlisted in the forces of the United States.

Action in the district court for Hennepin county to restrain the members of The Soldiers' Bonus Board from carrying out the provisions of Laws 1919 (Ex. Sess.) c. 49. The demurrer of the defendants to the complaint was sustained, Jelley, J. From the order sustaining the demurrer, plaintiff appealed. Affirmed.

Chief Justice Brown, Justice Holt and Justice Quinn being disqualified from sitting in this case, the Governor, pursuant to Const. art. 6, § 3, assigned Judge McClenahan, of the Fifteenth judicial district, Judge Catherwood, of the Tenth judicial district, and Judge Dancer, of the Eleventh judicial district, to sit in their places. The case was argued before Hallam, Dibell, McClenahan, Catherwood and Dancer, JJ.

[1] Reported in 175 N. W. 903.

*George T. Simpson* and *John F. Dahl,* for appellant.

*Clifford L. Hilton,* Attorney General, *Albert F. Pratt, Montreville, J. Brown* and *Egbert S. Oakley,* Assistant Attorneys General, for respondent.

*Frederick D. McCarthy, William D. Mitchell, E. E. Watson, Orrin E. Safford* and *LeRoy Bowen,* for the American Legion, filed a brief as amici curiae.        –

McCLENAHAN, J.

1. This action is brought by a qualified person for the purpose of permanently restraining the defendants from carrying out the provisions of Laws 1919 (Ex. Sess.) p. 72, c. 49, known as the Soldiers' Bonus Law. The attorney general, appearing for the defendants, interposed a general demurrer to the complaint. The demurrer was sustained by the trial judge and plaintiff appealed.

The real question to be determined is the constitutionality of the bonus law mentioned. Section 1 of that law defines the word "soldier," as used in the act, and the situation seems to require its quotation here in full. It reads:

Section 1. Definition.—That the word "soldier" as used in this act, shall mean any officer, soldier, sailor, marine or nurse who has been or is a part of the military or naval forces of the United States or of any nation associated with the United States in the war with Germany and who was a resident of the state of Minnesota at the time he was commissioned, enlisted, inducted, appointed or mustered into the military or naval service of the United States, and who has been or may be given an honorable or ordinary discharge or release from such service; provided, however, that the word "soldier," as used in this act, shall not be construed to mean, and shall not include any person who, at any time during the period of the war with Germany, sought so avoid service because of conscientious objections thereto, or because of alienage or who has been, at any time, guilty of fraud or violation or evasion of the Selective Service Act or of the rules or regulations of the War Department in force thereunder.

Section 2 provides that such soldier shall be entitled to receive from the state, out of a fund created by the act and called "The Soldier Bonus

Fund," the sum of fifteen dollars ($15) for each month or fraction of month of military or naval service as such soldier, after April 6, 1917, and prior to the date when peace shall be agreed upon between the United States and the German government. The minimum amount so to be received is fixed at fifty dollars ($50). This section contains other provisions not here material.

Section 3 requires the soldier to file his application for the benefits of the act with the clerk of the district court of the county in which he resides, or in which he resided at the time of his induction into the service, or with the adjutant general who is required to provide forms for such application.

Section 4 creates "The Soldiers' Bonus Board," to consist of the state auditor, the state treasurer, and the adjutant general, who are the defendants in this action. It is the duty of this board, among others, to examine into the applications filed, and make any other examination necessary to establish facts and to approve or disapprove such applications.

Section 5 authorizes the bonus board to issue and sell certificates of indebtedness to make funds available for carrying out the provisions of the act, and requires the proceeds of such sales to be paid into the bonus fund. These certificates are to aggregate twenty million dollars ($20,-000,000), and they, as well as the interest upon them, are to be paid out of the bonus fund. Any money remaining in that fund after such payments is to be credited to the state revenue fund.

Section 6 appropriates the sum of twenty million dollars ($20,000,-000), or as much thereof as may be necessary, out of the bonus fund for carrying out the provisions of the act.

Section 7 authorizes and directs the state auditor to levy and collect, as are other state taxes, for the year 1919, and for each of the nine succeeding years, a sum not exceeding two million dollars ($2,000,000) per year for the purpose of providing funds to pay such certificates as they mature and the interest thereon, and also to levy and collect such additional sums as may be needed to pay the interest upon them. All of which shall be placed in the bonus fund.

Section 8 relates to employees, their compensation and other details of administration.

144 M.—27.

Section 9 provides for paying the widow of a deceased soldier, if she has not remarried, the amount such decedent would have received under the act had he lived.

While sections 1, 5, 6, 7, 8 and 9, of article 9 of the Constitution are claimed to be violated by this statute, or expressly to prohibit its enactment, it does not seem necessary especially to consider any of those except sections 5, 6 and 7.

Section 5 authorizes a public debt to be contracted for the purpose of defraying extraordinary expenditures, but limits the aggregate of such debts to the sum of two hundred fifty thousand dollars ($250,000), and section 6 requires that the debts so authorized shall be contracted by a loan on state bonds.

Section 7 of article 9 of the Constitution declares that "the state shall never contract any public debt, unless in time of war, to repel invasion or suppress insurrection, except in the cases and in the manner provided in the fifth and sixth sections of this article." No limitation is imposed upon the amount of debt that may be contracted for the purposes contemplated by section 7 of article 9, nor is the evidence of such a debt restricted to any particular form. It seems to have been the purpose of the organic law to liberalize the application of this section, in view of the vital character of the emergency it was designed to provide against. But such emergency is not to be considered the mere repelling of invasion or suppressing of insurrection in time of war, as we understand the appellant to contend. A public debt for a proper military purpose may be legally contracted in time of war, without reference to a state of invasion or insurrection. Conditions may exist, as recent history has shown, which call for active military operations of various kinds, though no hostile invasion be imminent or even probable. Such operations might require the borrowing of large sums of money, the amount of which would be dependent upon the existing circumstances and could not, in the nature of things, be determined or limited in advance.

Franklin v. State Board of Examiners, 23 Cal. 173, is directly in point. The constitution of California limited the state debt to $300,000 "except in case of war, to repel invasion or suppress insurrection," etc. By an act of April 27, 1863, entitled "An act for the relief of the enlisted men of the California Volunteers in the service of the United

States" the legislature provided for the creation of a debt of $600,000 to be used in the payment of an additional $5 per month to enlisted men of the California Volunteers from the time of their entry into the service. The plaintiff entered service on November 25, 1861, and was discharged on July 25, 1863. The question was upon the constitutionality of the statute giving him $5 per month for the period of his service, and the statute was held authorized under the provision of the California constitution identical for practical purposes with section 7 of article 9 of our Constitution. This case is not distinguishable from the one before us. See also People v. Pacheco, 27 Cal. 175; Reis v. State, 133 Cal. 593, 65 Pac. 1102; State v. Stewart, 54 Mont. 504, 171 Pac. 755, Ann. Cas. 1918D, 1101.

We hold that the legislation in question is authorized by section 7 of article 9 of the Constitution of Minnesota, and that the debt so provided for will be the direct obligation of the state.

It is not to be inferred, however, that section 7 authorizes the incurring of a public debt, in time of war, for all purposes. The debt must be for a public purpose, as a matter of course, but it also must be for a purpose having some reasonable connection with the conduct, offensive or defensive, of the war in question; it must be for some legitimate military or naval purpose pertaining to the existing state of war. Any other interpretation would invite serious excesses.

That a state of war existed at the time of the passage of the act here involved needs no discussion, in view of the recent decisions of the Supreme Court of the United States sustaining the validity of the War Prohibition Act. Hamilton v. Kentucky Distilleries & Wareh. Co. 251 U. S. 146, 40 Sup. Ct. 106, 64 L. ed. ——; Dryfoos v. Edwards, 251 U. S. 146, 40 Sup. Ct. 106, 64 L. ed. ——.

The appellant urges that the legislation in question is not within the powers granted by the Constitution, because the beneficiaries, or a large proportion of them, were soldiers of the United States; that even the national guard units finally became federalized and lost their identity as state troops; that, under such circumstances, the state of Minnesota is under no legal or moral obligation to them such as will support the taxation provided for in this act. With this construction we do not agree. It is true that the Federal government alone has power to declare war,

but having done so, the government and people of Minnesota became bound to defend and support the national government. While the states of the nation are sovereign in a certain field, they are also members of the family of states constituting the national organization. City of Lowell v. Oliver, 8 Allen, 247; Opinion of the Justices, 211 Mass. 608, 98 N. E. 338; State v. Handlin, 38 S. D. 550, 162 N. W. 379; Trustees of Cass Township v. Dillon, 16 Oh. St. 38, 43. If Minnesota may properly give the lives of her sons in support of the nation, the withholding of the money of her people from such support would seem to be justifiable only by the clearest constitutional inhibition.

2. Taxes can be levied for public purposes only, and if the taxation provided for in the act we are now considering be not for a public purpose, it cannot be upheld. Constitution, article 9, section 1; 3 Dunnell, Minn. Dig. § 9119. The question whether a tax be for a public purpose or a private purpose is one of fact and proper for judicial ascertainment, but the question of governmental policy involved in a statute imposing a tax is a matter for legislative determination. Any doubt as to whether the purpose be public or private must be resolved in favor of the constitutionality of the law. To justify a court in declaring a tax invalid, on the ground that it was not imposed for the benefit of the public, the absence of a public interest in the purpose for which the money is raised by taxation must be so clear and palpable as to be immediately perceptible to every mind. City of Minneapolis v. Janney, 86 Minn. 111, 90 N. W. 312; Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L.R.A.(N.S.) 83, Ann. Cas. 1914B, 1278; Town of Bennington v. Park, 50 Vt. 178; Sharpless v. Mayor of Philadelphia, 21 Pa. 147, 59 Am. Dec. 759; Speer v. School Directors, 50 Pa. 150; Brodhead v. Milwaukee, 19 Wis. 624, 88 Am. Dec. 711; Booth v. Town of Woodbury, 32 Conn. 118.

Had this so-called Soldiers' Bonus Law been passed prior to the induction of its proposed beneficiaries into the service, its validity could hardly be questioned. In Comer v. Folsom, 13 Minn. 205 (219), this court held that it was competent for the legislature to give gratuities to those drafted into or voluntarily entering the military service of the United States, or to their families. See also Wilson v. Buckman, 13 Minn. 404 (441). Assuming that chapter 8 (Ex. Sess. 1862), and chap-

ter 11, Laws 1864, which were under consideration in the Comer case, related only to bounties that had been offered prior to entry into and as an inducement to enter the service, the cases therein cited in support of the rule the court announced recognized the propriety of rewarding past as well as future services. In City of Lowell v. Oliver, supra, the court said:

"We can see no valid distinction in principle between a right to raise money for a specific object yet to be accomplished, and a right to raise it to defray the expense of the same object after it has been attained."

The constitution of Massachusetts at that time granted, as the opinion states, full power and authority "to impose and levy proportional and reasonable * * * taxes upon all the inhabitants of, and persons resident and estates lying within the commonwealth; * * * for the public service, in the necessary defense and support of the government of the said commonwealth, and the protection and preservation of the subjects thereof." The action in the City of Lowell case was to recover from the treasurer of the state moneys advanced by that city in aid of families of persons, inhabitants of Lowell, who had enlisted in the military service of the United States, such advances having been made under several acts of the legislature.

Freeland v. Hastings, 10 Allen, 570, also cited in the Comer case, held that it was competent for the legislature to appropriate money and levy a tax for the purpose of paying bounties to persons who had volunteered, or might volunteer, to enlist as soldiers in the armies of the United States, raised under orders of the Federal government to aid in suppressing the rebellion. The tax there raised was for the purpose of refunding sums which had been contributed by individuals into a common fund for the general purpose of filling quotas of troops made under calls of the President during the Civil War.

The supreme judicial court of Massachusetts, in 1912 (The Opinion of the Justices, supra), answered in the affirmative the question whether it was within the power of the legislature to authorize the payment as a testimonial for meritorious service sums of money to certain veterans of the Civil War, if the legislature was of the opinion that the payment of such gratuities to such persons in recognition of the sacrifices which they made and the motives which prompted them to enlist, would tend to en-

courage the spirit of loyalty and patriotism and so to promote the public good by affording visible evidence that if hereafter there should be a call for men the commonwealth would not forget those who should volunteer, and added that "a gift of money has in it an element of private benefit which does not pertain to the erection of a statue or a monument which all may see, or even to the gift of a medal or other badge of honor which may be handed down as an object of just pride to the donee's descendants. But, as in the case of pensions, it always has been recognized as one of the ways in which meritorious service may be rewarded.  *  *  *  Wheth-er, taking all of the circumstances into account, the proposed legislation will be expedient, and whether gratuities such as it is proposed to give will tend to promote the public good by encouraging the spirit of loyalty and patriotism, is for the legislature, acting under the responsibility of their official oaths, to say."

In Brodhead v. Milwaukee, supra, it was said that considerations of gratitude alone to the soldier for his services, be he volunteer, substitute, or drafted man, will sustain a tax for bounty money to be paid to him or his family, and that the legislature may, in consideration of such serv-ices, give to the soldier or his family a suitable bounty after his enlist-ment, or even after his term of service has expired; that it is a matter which intimately concerns the public welfare, and that nation will live longest in fact, as well as in history, and be most prosperous, whose peo-ple are most sure and prompt in the reasonable and proper acknowledg-ment of such obligations.  This principle was reaffirmed in the recent case of State v. Johnson, —— Wis ——, 175 N. W. 589, holding constitu-tional the Wisconsin Soldiers' Bonus Act.

In Carver v. Creque, 48 N. Y. 385, it was held that the point raised that there was no consideration as between a town voting a bounty and one who had enlisted before the town meeting has been held was as void of legal merit as of morality.

The case of United States v. Hosmer, 9 Wall. 432, 19 L. ed. 662, up-held a bounty claim of a soldier who enlisted in July, 1861, though the act of Congress relied upon by him was not passed until a later date, the court closing its opinion with the statement: "We may add that it would not comport with the dignity of the government thus (in the man-ner there urged by the attorney general) to break faith with the gallant

men who in that hour of gloom stood forth to peril their lives for their country."

In Trustees of Cass Township v. Dillon, supra, the questions presented closely resembled those in the instant case. A section of the Ohio constitution limited the power of the state to contract debts to seven hundred fifty thousand dollars ($750,000). By an act of the legislature in 1861 there was authorized to be borrowed, on the faith and credit of the state, the full limit of seven hundred fifty thousand dollars ($750,000). A few days later another act was passed to provide more effectually for the defense of the state against invasion, and by it the authority to borrow money was extended to two million dollars ($2,000,000) more, all of which was designed to meet appropriations made for the purpose of military defense. The court said:

"The necessity for defensive war measures on the part of the state, has been repeatedly recognized and declared by the legislature. A large public debt has been created, which is warranted by the Constitution only for the purpose of repelling invasion, suppressing insurrection, or defending the state in war. For these objects the power of the state to contract debts is not limited by constitutional provisions. But, excluding these objects * * * the power of the state to contract debts is limited to seven hundred and fifty thousand dollars. * * * The defense of the state involves not merely its territorial integrity, but the preservation of its rights and interests. * * * The state has a deep interest in the preservation of the government of the United States, * * * and when endangered in war by a hostile power, the state government may, within the bounds of its own constitutional powers, aid in its preservation, and, in so doing, is but in the exercise of the legitimate powers of self-defense. The decision of the question as to whether a state of facts existed which created an exigency for the defense of the state, is necessarily vested in, and left to the wisdom and discretion of, the political department of the government; and the existence of the exigency having been decided by that department, it is not within the province of the judiciary to review that decision. If, for example, the legislature had authorized the state directly to aid in raising the troops called for by the President, and to this end had offered the bounties in question, and provided for their payment by taxation, it would not be within

the province of the court to question the validity of the law, either upon the ground that no necessity existed for the defense of the state, or that the mode of defense adopted was not legitimate. * * * Bounties are but a mode of compensation for services and may be either for past, or as an inducement to future service."

3. It is contended that the act is unconstitutional because it provides for the payment of a bonus to residents of the state who served only in the forces of nations associated with the United States, and not in the forces of the United States itself. We are of the opinion that this class is not included within the benefits of the act, for the reason that a "soldier," as defined in the act, is one who, in addition to other qualifications, "was a resident of the state of Minnesota at the time he was commissioned, enlisted, inducted, appointed or mustered into the military or naval service of the United States, and who had been or may be given an honorable or ordinary discharge or release from such service."

That the legislature contemplated making provision for resident soldiers who served with the allies only, may be conceded. But by the express language of the act its benefits are limited to those who entered the service of the United States and were honorably discharged therefrom; no language is there used which makes it possible for a soldier of any nation associated with the United States in the war with Germany, but a resident of Minnesota within the purview of the act, to determine what proof he should submit to the bonus board in support of his claim as such soldier; nor is there any language which teaches that board what it should require in the way of proof of such a soldier's qualification to become a beneficiary under this law. The situation presents a casus omissus which the court cannot supply by construction. 3 Dunnell, Minn. Dig. § 8985; Lewis, Sutherland St. Const. (2d ed.) §§ 605-609.

Justices Hallam and Dibell, however, are of the opinion that the act expresses an intent to provide for soldiers, residents of Minnesota, who have been or are a part of the military or naval forces of any nation associated with the United States in the war with Germany, and that it is definite enough to accomplish that result.

The majority opinion makes it unnecessary to consider the power of the legislature to provide for those who never served in the United States forces.

We hold that the law is authorized by section 7 of article 9 of the Constitution; that the debt to be created will be a direct liability of the state; that such debt will be created for a public purpose, and that the law does not include residents of Minnesota who served in the forces of the associated nations, but did not serve in the forces of the United States.

Order affirmed.