[No. 16661.  *En Banc.*  October 4, 1921.]

THE STATE OF WASHINGTON, *on the Relation of Louis F. Hart et al., as State Finance Committee, Plaintiff,* v. C. W. CLAUSEN, *Respondent.*[1]

STATES (22, 25)—PUBLIC DEBT—SOLDIERS' BONUS ACT—ISSUANCE OF BONDS—AUTHORITY OF STATE BOARD—STATUTES—CONSTRUCTION.  Under art. 8, § 2, of the state constitution authorizing the incurring of indebtedness, without any limitation, for conditions arising out of war, and Laws 1920, Ex. Sess., ch. 1, §§ 6, 7, which appropriate a definite sum derivable from a sale of state bonds, to pay equalized compensation for services in the European war, and further provides that, in case such sum be insufficient to pay the compensation allowed, additional bonds be issued and sold for the purpose, a definite appropriation of public money was made involving no delegation of legislative power, since the amount necessary is simply a mathematical proposition determinable from the public records.

Application filed in the supreme court August 16, 1921, for a writ of mandate to compel the state auditor

[1]Reported in 201 Pac. 30.

to issue warrants in payment for bonds issued under the veterans' compensation act. Granted.

*The Attorney General, Fred J. Cunningham, Assistant,* and *Nat U. Brown,* for relators.

*John A. Frater,* for respondent.

HOLCOMB, J.—The sole question in this case is whether or not ch. 1, Laws of 1920, p. 7, is sufficient authorization for the issuance of bonds of the state in excess of $11,000,000. The question arises by reason of § 6, p. 11, of the act, which contains the following provisions:

"For the purpose of providing means for the payment of compensation hereunder and for paying the expenses of administration there shall be issued and sold bonds of the State of Washington in the sum of Eleven Million Dollars ($11,000,000): *Provided,* That if the proceeds of the sale of such bonds be insufficient to pay the compensation herein allowed, then sufficient additional bonds to pay such compensation shall be issued and sold. The issuance, sale and retirement of said bonds shall be under the general supervision and control of the State Board of Finance."

Bonds to the amount of eleven million dollars have been issued and sold by the state and the funds derived therefrom have been practically exhausted in the payment of warrants. Additional bonds have been authorized and a block of them bid in by the finance committee as an investment for the permanent school fund. The state auditor has refused to issue warrants on the school fund in payment of the bonds, and this action is brought to compel him so to do.

The respondent predicates his position upon the ground that there is a constitutional inhibition against the action of the committee.

The first three sections of art. 8 of the state constitution which have to do with "public indebtedness" are as follows, to wit:

"§ 1. The state may, to meet casual deficits or failure in revenues or for expenses not provided for, contract debts, but such debts, direct and contingent, singly or in the aggregate, shall not at any time exceed four hundred thousand dollars ($400,000), and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained, or to repay the debts so contracted, and to no other purpose whatever.

"§2. In addition to the above limited power to contract debts, the state may contract debts to repel invasion, suppress insurrection, or to defend the state in war, but the money arising from the contracting of such debts shall be applied to the purpose for which it was raised, and to no other purpose whatever.

"§ 3. Except the debt specified in sections one and two of this article, no debts shall hereafter be contracted by or on behalf of this state, unless such debt shall be authorized by law for some single work or object to be distinctly specified therein, which law shall provide ways and means, exclusive of loans, for the payment of the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty years from the time of the contracting thereof. No such law shall take effect, until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election, and all moneys raised by authority of such law shall be applied only to the specific object therein stated, or to the payment of the debt thereby created, and such law shall be published therein, throughout the state, for three months next preceding the election at which it is submitted to the people."

It is conceded that § 1, art. 8, has nothing to do with the question involved, but respondent contends that the petitioners can find no authority for their acts un-

der § 2, art. 8, and also contends that § 3, art. 8, prohibits the contracting of debts on behalf of the state unless they fall within the proviso of §§ 1 and 2, and draw particular attention to the following parts of § 3:

". . . which law shall provide ways and means, exclusive of loans, for the payment of the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty years from the time of the contracting thereof. No such law. shall take effect, until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election, . . ."

Section 6 of the Veterans' Equalized Compensation act provides for the issuance and sale of eleven million dollars worth of bonds, and § 7 provides that the money arising from their sale be deposited in the state treasury to the credit of the special fund known as the Veterans' Compensation Fund. Section 7 also makes an appropriation of eleven million dollars, in the following language:

"For the purpose of carrying out the provisions of this act there is hereby appropriated from the Veterans' Compensation Fund the sum of eleven million dollars ($11,000,000)."

Section 8 of the act authorizes and directs the levy of a one mill tax for the purpose of creating a fund with which to retire the bonds and pay the interest thereon. Section 13 of the act directs its submission to the people for ratification at a general election.

Respondent therefore contends that a definite amount of money, eleven million dollars and no more, having been appropriated, and a definite millage tax provided for the purpose of retiring the authorized indebtedness created, and the act having been passed by the legislature having been legally referred to the

people for their ratification, and further, that the legislature of 1920-1921 reappropriated the exact amount of eleven million dollars, that petitioners are in effect seeking to incur a state indebtedness without a definite appropriation having been made therefor and without the authority of a legislative act properly referred to and approved by the people at a general election.

We have heretofore decided, in *State ex rel. Hart v. Clausen,* 113 Wash. 570, 194 Pac. 793, that the act in question is valid as a constitutional act in that it was for a public purpose. While § 2, art. 8, of the constitution of Washington was not particularly referred to as authority supporting the constitutionality of the law, it is manifest that when it was decided that the payment of the funds provided for by the Veterans' Compensation Act as being for a public purpose brought it within that section, and § 3, art. 8, having been conformed to, no other provision of the constitution stood in the way.

When the act was passed it was impossible to ascertain the exact number of veterans who would be entitled to the additional compensation or the exact amounts due to those entitled to it. Those matters, however, were matters of public record to be determined according to the records of the government of the United States, and when determined the amount necessary to be raised by the sale of bonds was possible to determine. It is a general rule that that is certain which is capable of being ascertained and made certain. The debt, therefore, is already contracted by the legislature.

Recalling that the proviso of § 6, ch. 1, Laws of 1920, is that "if the proceeds of the sale of such bonds be insufficient to pay the compensation herein allowed, then sufficient additional bonds to pay such compensa-

tion shall be issued and sold,'' the conclusion is irresistible that when it is found that eleven million dollars, the sum appropriated by the act, is not sufficient for the compensation of all the veterans entitled to the benefits of the act, it is clear that the state board, under that proviso, has power and is directed to issue bonds in a sufficient amount to provide for the compensation of all the veterans entitled thereto.    The authorization is clear and unequivocal.

There is no limitation imposed upon the amount of debt that may be contracted for the purposes contemplated by subd. 2, art. 8, of the constitution.    The legislature, the people approving at the referendum, contracted the indebtedness, and the evident intention of the legislature and the people was that every veteran entitled to the amount fixed by the act should be provided for.    As was said by the supreme court of Minnesota in *Gustafson v. Rhinow,* 114 Minn. 415, 175 N. W. 903:

"No limitation is imposed upon the amount of debt that may be contracted for the purposes contemplated by section 7 of article 9 [Minnesota Constitution], nor is the evidence of such a debt restricted to any particular form.    It seems to have been the purpose of the organic law to liberalize the application of this section in view of the vital character of the emergency it was designed to provide against.    But such emergency is not to be considered the mere repelling of invasion or suppressing of insurrection in time of war, as we understand the appellant to contend.    A public debt for a proper military purpose may be legally contracted in time of war, without reference to a state of invasion or insurrection.    Conditions may exist, as recent history has shown, which call for active military operations of various kinds, though no hostile invasion be imminent or even probable.    Such operations might require the borrowing of large sums of money, the amount of which would be dependent upon the exist-

ing circumstances, and could not, in the nature of things, be determined or limited in advance. *Franklin v. State Board of Examiners,* 23 Cal. 173, is directly in point. The constitution of California limited the state debt to $300,000, 'except in case of war, to repel invasion or suppress insurrection,' etc. By an act of April 27, 1863 (St. Cal. 1863, p. 662), entitled 'An Act for the relief of the enlisted men of the California Volunteers in the service of the United States,' the Legislature provided for the creation of a debt of $600,000 to be used in the payment of an additional $5.00 per month to enlisted men of the California Volunteers from the time of their entry into the service. The plaintiff entered service on November 25, 1861, and was discharged on July 25, 1863. The question was upon the constitutionality of the statute giving him $5.00 per month for the period of his service; and the statute was held authorized under the provision of the California Constitution identical for practical purposes with section 7 of article 9 of our Constitution. This case is not distinguishable from the one before us. See, also, *People v. Pacheco,* 27 Cal. 175; *Reis v. State,* 133 Cal. 593, 65 Pac. 1102; *State v. Stewart,* 54 Mont. 504, 171 Pac. 755, Ann. Cas. 1918D, 1101.''

The authorities upon the right of the state generally to issue bonds and create indebtedness are of little assistance in this case.

''The different states of the Union in incurring indebtedness and issuing negotiable securities therefor, are subject to the specific limitations to be found in their several constitutions, either in respect to the amount to be issued or the purpose for which issued.'' Abbott, Public Securities, p. 157.

''Except as limited by constitutional provisions, the legislature has absolute control over the finances of the state; and its power as to the creation of indebtedness or the expenditure of state funds, or making appropriations is plenary, and the exercise of this power

cannot be controlled or reviewed by the courts." 36 Cyc. 882.

Having determined that the creation of the indebtedness involved in this act was valid under our constitutional limitations, we are confident that the proviso in § 6 of this act for the issuance of additional bonds, if the eleven million dollars authorized be found insufficient, is also valid. There is no delegation of legislative power in that proviso, but merely an authorization to ascertain that which may be made certain by public records, and to issue additional bonds upon such determination. There is no exercise of discretion involved. It is simply a mathematical proposition and a mandate to issue sufficient bonds to satisfy all the demands. The authority is clear.

With the question of whether or not the proceeds of additional bonds can be paid out of the state treasury under the appropriation limiting the amount of eleven million dollars, we have no present concern.

The writ of mandate will issue.

PARKER, C. J., TOLMAN, MITCHELL, BRIDGES, MAIN, HOVEY, and FULLERTON, JJ., concur.