STATE, *ex rel.,* GEORGE COUPER GIBBS, Attorney General, v. ROBERT D. GORDON, JAMES G. CARY, HOWARD BELOTE, J. F. HAMMOND and RAY GREENE

189 So. 437
Opinion Filed May 29, 1939

314

George Couper Gibbs, Attorney General, and *Wm. Joe Sears, Jr.,* for Relator;

*W. D. Jones, Jr., J. Henry Blount, Giles J. Patterson, John W. Donahoo,* for Respondents.

TERRELL, C. J.—The Legislature of 1939 enacted House Bill 1145 (which was approved and became effective May 11) creating the Duval County Air Base Authority, a special taxing district located in and being coextensive with Duval County, defining its powers and duties and designating the County Commissioners of Duval County and their successors in office as its *ex officio* governing body. It will hereafter be referred to as the Authority.

The Attorney General on behalf of the State filed here an information in the nature of quo warranto challenging the validity of said Act and charging that respondents were performing and exercising the powers and functions of *ex officio* members of the Board of Commissioners of Duval County Air Base Authority without warrant of law and in violation of the Constitution of the State of Florida. The cause now comes on to be heard on the demurrer of respondents to the information which raises the sole question of the constitutional validity of the Act.

Summarized, it may be said that House Bill 1145 creates the Duval County Air Base Authority for the purpose of aiding the government of the United States in its program of national defense, the aid required of it being that of acquiring and paying for such lands as may be necessary for the erection and establishment by the Federal Government of a naval air base, including a site upon which a base

for naval airplane carriers and other sea ships for defense of the United States may be established.

To provide funds for preliminary purposes and for holding the elections authorized by the Act, the Authority is empowered to issue its promissory notes in an amount not exceeding $25,000 payable within one year from issue, bearing interest not exceeding five per cent, to be paid from a special tax levy provided by the Act. To pay for the lands necessary for the purposes of the Act, the Authority is authorized to issue, subject to an affirmative vote of the freeholders, negotiable bonds not to exceed $1,500,000.00. The taxing power and the full faith and credit of the Authority is pledged for the payment of the principal and interest of these bonds.

The Authority is given the power of eminent domain by the Act and is authorized to convey or donate to the Federal Government all property or funds held by it if necessary for the Federal government to secure the required sites for airplane bases by condemnation or otherwise. It is shown that the site selected for the major naval air base includes the present militia camp site owned by the State of Florida known as Camp Clifford J. Foster, which is administered by the Armory Board of the State of Florida. In view of this situation, the Act authorizes and designates the Armory Board as the agency of the State to convey said property to the Authority or to the Federal Government upon such terms as it may deem advisable and if terms cannot be agreed on by the Authority and the Armory Board, the said lands may be condemned by the Authority or by the Federal government and a reasonable consideration for them determined in this manner. It is further required that the Act be liberally construed to effectuate its purpose.

It is first contended that in declaring as public policy that "the defence of the country is the joint responsibility of the government of the United States of America, the several States thereof including the State of Florida, and of all political divisions and subdivisions thereof" Section 1 of House Bill 1145 violates Section 8 of Article I, Constitution of the United States in that it provides a joint responsibility on the part of the State and Federal Government in the matter of securing the national defense.

It is quite true that various provisions of Section 8, Article I of the Federal Constitution vest in Congress the power and the means to raise and support the Army and the Navy, to declare war and provide for the national defense, but in no sense are such grants of power made an exclusive function of the Federal government. Indeed by the very nature of the compact between the State and Federal Government, this could not be the case. Ours is a dual sovereignty, the one operating within the other, the Federal exercising those powers granted it by the State, and each mutually dependent. In matters of national defense, the Federal Government takes the initiative but the men, the money, the sinews and the implements of war and defense must derive through the States, so by their very nature, they are an important factor in any scheme of national defense.

In some aspects, the sovereignty of the States has been adjudicated to be independent and above national control or regulation, but not so in matters of defense. If the nation fails in this field, the State goes with it. The State militia by law articulates with the national army in time of war and cases are too numerous to relate in which states, counties, and municipalities by legal fiat have aided in the development of projects that were essentially federal but

in which the local entity had an abiding interest. Gilbert v. Minnesota, 254 U. S. 325, 41 Sup. Ct. 125, 65 L. Ed. 287; Gustafson v. Rhinow, 144 Minn. 415, 175 N. W. 903; State v. Clausen, 95 Wash. 214, 163 Pac. 744; Stockton v. Powell, 29 Fla. 1, 10 So. 688. These cases are typical and might be extended to great length. They dispel the idea that the question of national defense is exclusively Federal.

It is next contended that Section 2 of House Bill 1145 is violative of Section 15, Article XVI of the Constitution of Florida in that it created a governing body for "the "Duval County Air Base Authority," to be known and designated as the "Board of Commissioners of Duval County Air Base Authority," and designates the "members of the Board of County Commissioners of Duval County and their successors in office" as *ex officio,* the members of said Board.

The pertinent provision of Section 15, Article XVI, of the Constitution is as follows:

"No person holding or exercising the functions of any office under any foreign Government, under the Government of the United States, or under any other State, shall hold any office of honor or profit under the Government of this State; and no person shall hold, or perform the functions of more than one office under the Government of this State at the same time * * *"

This question has been concluded against the contention of relator by previous decisions of this Court wherein we held that a legislative designation of a constitutional officer to perform *ex officio* the function of another or additional office is not a holding of two offices at the same time in violation of the provision of the Constitution quoted provided the duties imposed are consistent with those being exercised. It is merely the imposition of new duties on an

officer already in commission. Whitaker v. Parsons, 80 Fla. 352, 86 So. 247. Respondents receive no additional compensation as members of the Board of Commissioners of Duval County Air Base Authority and their duties as such are not inconsistent with their duties as County Commissioners.

It is also contended in this connection that House Bill 1145 is violative of Section 27, Article III, of the Constitution of Florida in that the Board of Commissioners of the Duval County Air Base Authority are designated in said Act rather than elected by the people or appointed by the Governor as said Section 27, Article III, requires.

A complete answer to this question is found in State, ex rel., Attorney General, v. Reardon, 114 Fla. 255, 154 So. 868, wherein we held that Section 27, Article III, of the Constitution had no reference to district officers such as are involved here, that it is competent for the Legislature to name such officers in the Act and impose additional duties on them where not inconsistent with those being performed.

It is next contended that House Bill 1145 violates Section 5 of Article IX of the Constitution in that it responds to a State function but creates a special taxing district co-extensive with a single county and imposes on it the burden of paying for the same.

Section 5 of Article IX of the Constitution among other things, limits the assessment and collection of taxes in counties and municipalities to county and municipal purposes. Relator contends that House Bill 1145 violates this command. This Court has repeatedly held that the Legislature may be the judge of what constitutes a county or municipal purpose and that such purposes frequently overlap; in other words, an object or function may be both county and municipal in purpose.

By the same token, a governmental project may respond to a municipal, county, state, or federal purpose or all may coalesce in the same project but that fact does not inhibit the county, state, or the Federal Government, any one, or all of them from contributing to it. This Court takes judicial knowledge of the fact that the expenditure of many millions of dollars for a defense project in a locality or county such as we are here concerned with will redound in material values to Duval County and the State of Florida. The fact that the product of the expenditure is a great defense medium for the Federal Government is no bar to the State and the county contributing to it when it results in material development in which they are the beneficiaries. Stockton v. Powell, 29 Fla. 1, 10 So. 688; Board of Commissioners of Escambia County v. Board of Pilot Commissioners of Port of Pensacola, 52 Fla. 197, 42 So. 697; State v. Clausen, *supra;* Merrick v. Inhabitants of Amherst, 12 Allen 500 (94 Mass. 500).

In the last cited case, the Supreme Judicial Court of Massachusetts was confronted with the constitutional validity of an Act of its Legislature authorizing the town of Amherst to raise money for an Agricultural College to be established by the State in the latter city.

The Court held that a very large discretion must be vested in the Legislature in reference to the purposes for which money may be raised by taxation and as to the mode in which certain public burdens requiring the expenditure of tax money may be apportioned and distributed among the persons and against the property of the citizens of the State. While clear abuses of the power to tax may be checked by the courts, it must be realized that there is no such thing as exact uniformity and that slight aberrations from the rule of uniformity will not be interfered

with. The Court, in' other words, can enforce the observance of constitutional limitations but no more.

The Massachusetts Court also approved the rule which we think proper that when project such as are involved here are to be entered into, it is proper to impose the major portion of the burden on the community where the project is t o be located and which receives the greater benefit, leaving the balance to be distributed in such manner as the Legislature may deem the.public generally to be benefited. The case of State v. Clausen, *supra,* reviews numerous cases on which the courts have approved legislative Acts authorizing counties, municipalities, districts, and other governmental entities to combine for the construction and support of schools, bridges, roads, armories, and other public projects. No public matter of public policy seems to be more generally approved.

The net holding of all the decisions on this point seems to be that when a public work of any kind is to be authorized, unless convinced by constitutional provision, the place, the method, and the means of doing it rest in the discretion of the Legislature. It may apportion the burden among all the counties or other entities affected or it may impose the major burden on the area primarily benefited. We have cited the leading cases on this point but do not attempt a review of any of them. Within the limits outlined, the discretion of the Legislature will not be controlled but it may be canalized within the limits fixed for in the Constitution.

It is asserted that House Bill 1145 is repugnant to the Constitution of Florida because it requires county or local constitutional officers to perform State functions.

What we said in the forepart of this opinion in answer to the second question would seem to be complete answer to the instant question. If the duties imposed on respond-

ents by the Act do not conflict with their usual duties as county commissioners, it is perfectly competent for the Legislature to impose on them certain duties as commissioners of the Duval County Air Base Authority. This is true whether the new duties be state or county in their nature. No conflict in these duties is pointed out.

It is next contended that Section 7 of House Bill 1145 is in violation of Section 6 of Article IX of the Constitution of Florida in that it authorizes the issue of not to exceed $25,000 in promissory notes by the Authority without an approving vote of the freeholders.

If these notes constituted "bonds" in the contemplation of Section 6 of Article IX, this objection would be fatal to this section of the Act but the notes are payable within one year from issue and this Court has repeatedly held that such notes do not constitute bonds. Tapers v. Pichard, 124 Fla. 549, 169 So. 39; State, ex rel., Houston v. Hillsborough County, 136 Fla. 503, 183 So. 157.

It is next contended that Section 14 of House Bill 1145 violates Section 16 of Article III of the Constitution of Florida in that the title does not show that a special registration of freeholders is required preliminary to any election that may be held by the Authority for approving bonds issued by it.

It is not necessary for the title to so specify; it is only required that the title be an index to the Act and the title brought in question is ample for that purpose. It shows the creation of the Authority and the fact that bonds are to be issued. It is well known that participation in such elections is limited to freeholders and that they must be registered. The requirement for registration, the time, place, and other regulations with reference to it are matters

purely of legislative discretion and there is no showing that such discretion was arbitrarily exercised.

It is last contended that Section 24 of House Bill 1145 is violative of Section 22 of Article III of the Constitution of Florida in that it authorized suits against the State by a special Act when such suits are required to be authorized by general law.

It is true that Section 22 of Article III of the Constitution authorizes by general law suits against the State to recover any liability against it. We are not concerned here with a "liability" against the State so this provision of the Constitution has no application whatever. The sole purpose of Section 24 of House Bill 1145 is to secure a judicial determination of the consideration to be paid by the Authority to the Armory Board for such of the State's property as may be acquired for the purposes of the Act when the Authority and the Armory Board fail to reach an agreement. We find no constitutional objection to it.

It follows that each and every objection raised to the validity of House Bill 1145, Acts of 1939, is found without merit, so the demurrer to the information is sustained.

It is so ordered.

WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.