H. WHITAKER, AS SHERIFF OF ESCAMBIA COUNTY, FLORIDA, *Plaintiff in Error*, v. G. F. PARSONS, *Defendant in Error*.

Opinion Filed July 30, 1920.

1. The court takes judicial notice that cattle raising is an important industry in this State.

2. To prescribe and enforce regulations suitable to foster the cattle raising industry in furtherance of the general wel-

fare are within the sovereign governmental powers of the State to be exercised through enactments by the lawmaking department.

3. The character and extent of appropriate regulations to be enforced for any given purpose are within the discretion of the lawmaking power, subject only to organic provisions securing private rights.

4. Compulsory eradication of ticks from cattle by "dipping" the cattle in solutions that destroy the ticks may be an appropriate and effective means of preserving the health and well-being of the cattle and the due enforcement of reasonable regulations to accomplish such a salutary purpose is within the sovereign powers of the State, whether exerted as a police taxation, eminent domain or other governmental power.

5. All governmental powers of the State are subject to the limitations imposed by the Constitution of the State and to applicable provisions of the Federal Constitution; the organic provisions being designed to secure all individual rights that are consistent with efficient government to conserve the general welfare.

6. Individual rights to life, liberty and property are in law acquired and enjoyed subject to the exercise of the regulating powers of government; and such rights are not protected by the Constitution from the due exercise of such governing powers.

7. The purpose of constitutional government is to secure individual rights subject to valid regulations enacted in the interest of the public good.

8. The organic provisions requiring due process and equal protection of the laws in depriving individuals of life, liberty or property expressly recognize that the right to protect life, liberty and property is not absolute, but that it is subject to restrictions that must necessarily be imposed by the lawmaking power, "in order to secure the blessing of con-

stitutional liberty," in "maintaining public order," to "insure domestic tranquility," and "to promote the general welfare."

9. The provisions of Chapter 7345, Acts of 1917, relating to the compulsory dipping of cattle to avoid the evils of tick infection are within the regulating powers of the State, to the exercise of which power property rights are subject; and the statute itself does not abridge the privileges or immunities of any citizen or deny to any one due process or equal protection of the laws.

10. If rights of individuals are violated by arbitrary, unreasonable or illegal action in applying a statute, a remedy is available in due course of legal proceedings.

11. The provisions of Chapter 7345, Acts of 1917, relative to compulsory cattle dipping to eradicate tick infection do not in terms or purpose arbitrarily or illegally invade personal or property rights or delegate legislative powers in violation of the Constitution.

12. The Legislature having all the lawmaking power of the State that is not withheld by the Constitution, may prescribe duties to be performed by officers expressly provided for by the Constitution, in addition to the duties of those officers that are defined in the Constitution, where not forbidden by the organic law.

13. The Constitution does not withhold from the Legislature the power to prescribe additional duties to be performed by the State Treasurer or others of "the administrative officers of the executive department" that are not inconsistent with their duties as defined by the Constitution; and such duties may be to act as members of Boards or Commissions in conjunction with other officers who are provided for by statute, the commissions issued to constitutional officers being sufficient to cover any duties imposed upon them by law.

14. Chapter 7347, Acts of 1917, is a general law potentially applicable to all the counties of the State exerting a sovereign power of the State for a general State purpose.

15. The local option features of Chapter 7345, Acts of 1917, do not delegate to the counties the power to declare what the law shall be or how it shall operate when it becomes effective, but it enables the counties respectively to determine by an election whether certain provisions of a complete statute shall become operative in the particular counties. This is not an unconstitutional delegation of lawmaking power.

A Writ of Error to the Court of Record for Escambia County; C. Moreno Jones, Judge.

Judgment reversed.

*Van C. Swearingen,* Attorney General, *D. Stuart Gillis,* Assistant, and *Myers & Myers,* for Plaintiff in Error,

*John P. Stokes* and *John S. Beard,* for Defendant in Error.

WHITFIELD, J.—By petition to the Court of Record for Escambia County, Florida, G. F. Parsons alleged that he was held in custody by the Sheriff under a warrant of arrest charging that he "did in violation of Chapter 7345, Acts of 1917, Laws of the State of Florida, knowingly and wilfully violate and fail to keep and perform certain Rules and Regulations regularly and lawfully made and promulgated by the State Live Stock Sanitary Board of the State of Florida, by then and there, as owner, custodian and in charge of certain cattle, in said Justice of the Peace District, after being served with notice and receiving instructions concerning the methods of systematic tick eradication, failed to dip such cattle on said 30th day of April, A. D. 1920, at the Pleasant Grove vat, located at Pleasant Grove, in said Justice of the Peace District, as he was designated to do at such time and

place by official notice duly and legally served upon him personally, on the 16th day of April, A. D. 1920; and that, at said time, and in said place, the said Chapter 7345, Acts of 1917, Laws of the State of Florida, was then and there in full force and effect, and before said time a special election had been called and held in Escambia County, Florida, according to the laws governing special elections, at which a majority of the qualified electors voting in said election had declared in favor of compulsory systematic tick eradication work and compulsory cattle dipping, and all acts, matters, things, resolutions and notices had been done, performed and published by said State Live Stock Sanitary Board of the State of Florida, to put said Chapter 7345, Acts of 1917, Laws of the State of Florida, in full force and effect in said County of Escambia at the time and at the place mentioned."

It is further alleged that petitioner's "detention and custody and deprivation of liberty of said H. Whitaker, as such Sheriff, is without authority of law and is in violation of the Constitution of the United States and the Constitution of Florida, in that said Chapter 7345, Acts 1917, Laws of the State of Florida, is in violation of the 14th Amendment to the Constitution of the United States, in that it deprives petitioner of his liberty and property without due process of law, and deprives him of equal protection of the laws, and it abridges his privileges and immunities as a citizen of the United States, and for the same reasons is in violation of Section 12, Declaration of Rights, Constitution of the State of Florida, and is in violation of Section 15, Article 16, of the Constitution of the State of Florida, and is in violation of Article 3 of the Constitution of the State of Florida, and is in violation of Section 24, Article 4 of

the Constitution of the State of Florida, and is in violation of Section 20, Article 3 of the Constitution of the State of Florida, and is in violation of Section 22 of the Declaration of Rights, Constitution of the State of Florida, and is in violation of Section 15, Article 3 of the Constitution of the State of Florida, and is in violation of other provisions of the Constitution of the State of Florida."

A writ of *habeas corpus* was prayed for, issued and served on the Sheriff, who made return "that the said G. F. Parsons was by me arrested and is by me held under the authority and by virtue of a certain warrant issued by William L. Johnson, Justice of the Peace, on the first day of May, 1920, a copy of which said warrant is attached to the petition for writ of habeas corpus herein and is by reference thereto made a part hereof; and the said G. F. Parsons is not by me held by any other writ, process or authority."

A motion to quash the return was made upon the grounds "that the respondent seeks to justify the detention of petitioner pursuant to a prosecution based upon Chapter 7345, Acts of 1917, Laws of the State of Florida, and said purported Act is unconstitutional and void for the following reasons: That said purported Act is violative of the 14th Amendment to the Constitution of the United States, in that it deprives the petitioner of his liberty without due process of law, and abridges his privileges and immunities as a citizen of the United States and denies to him the equal protection of the laws; is violative of Sections 1 and 12, Declaration of Rights, Constitution of the State of Florida, in that, under its provisions, all men are not equal before the law, and because it deprives petitioner of his liberty and property without

due process of law; is violative of Section 15, Article 16, Constitution of the State of Florida, in that it provides that the same person shall hold and perform the functions of more than one office under the Government of this State at the same time; is violative of Section 27, Article 3, of the Constitution of the State of Florida, in that, under its provisions, the Legislature provided for the creation of officers and did not provide for their election by the people or appointment by the Governor, and did not, by law, fix their duties and compensation; is violative of Section 24, Article 4, of the Constitution of the State of Florida, in that it imposes duties upon the Treasurer of the State of Florida, in addition to the duties imposed upon him by the Constitution of Florida; is violative of Article 3 of the Constitution of the State of Florida, in that it undertakes to delegate to the State Live Stock Sanitary Board, and to the electors in a particular county the power to legislate; is violative of Section 22 of the Declaration of Rights, Constitution of the State of Florida, in that it provides for unreasonable seizures and searches; is violative of Section 16, Article 3, of the Constitution of the State of Florida, in that the body of the Act is broader than its title; is violative of Section 14, Article 4, of the Constitution of the State of Florida, in that it provides for the issuance of commissions otherwise than signed by the Governor, countersigned by the Secretary of State, and sealed with the Great Seal of the State; is violative of Section 5, Article 9, of the Constitution of the State of Florida, in that it authorizes the several counties in this State, which may adopt the provisions of said purported law to assess and impose taxes for other than county purposes; is violative of Section 3, Declaration of Rights of the Constitution of the State of Florida, in that it deprives the citizen of the right of trial

by jury; is violative of Section 12, Declaration of Rights of the Constitution of the State of Florida, in that it takes private property without just compensation; is violative of Section 24, Article 3 of the Constitution of the State of Florida, in that it does not provide for a uniform system of county government, except in cases where local and special laws are provided by the Legislature that may be inconsistent therewith; is violative of Section 20, Article 3 of the Constitution of the State of Florida, in that it is a special and local law and purports to regulate the jurisdiction of duties of County Commissioners, of the Treasurer, Commissioner of Agriculture and Superintendent of Public Instruction; and purports to relate to the assessment and collection of taxes for State and County purposes, and purports to regulate the practice of courts of justice other than municipal courts, and purports to provide for the punishment of crime and misdemeanor, and was enacted by the Legislature without publication in Escambia County of notice of intention to apply to the Legislature therefor, and that said purported Act imposes duties and burdens upon citizens in Escambia County that are not imposed upon citizens in Santa Rosa County similarly situated, and imposes such duties and burdens upon citizens of Escambia County that are not imposed upon other citizens in the same county who are similarly situated; and said purported Act purports to authorize the expenditure of State funds in certain counties of the State while such funds are not expended in other counties of the State, although such funds are raised by general taxation of all the people of the State of Florida, and, under the provisions of said purported Act, the liberty and the property of the citizens are subject to the whim and caprice of the State Live Stock Sanitary Board in the first instance, and to its officers,

employees and agents in the administration and enforcement of such purported law, and the regulations prescribed by the State Live Stock Sanitary Board.

The court rendered the following judgment:

"This cause coming on to be heard upon motion to quash the return of the Sheriff to the writ of habeas corpus heretofore issued, and counsel upon both sides having been heard, and the same having been considered by the Court,

"IT IS HEREBY ORDERED AND ADJUDGED, that the said motion be, and the same is hereby, sustained,

"AND IT IS FURTHER ORDERED AND ADJUDGED, that the petitioner, the said G. F. Parsons, be, and he is hereby, discharged from custody."

A writ of error was allowed and taken by the Sheriff under the statute, Sec. 2257, Gen. Stats., 1906, Compiled Laws, 1914.

The court takes judicial notice that cattle raising is an important industry in this State. To prescribe and enforce regulations suitable to foster the industry in furtherance of the general welfare, are within the sovereign governmental powers of the State to be exercised through enactments by the lawmaking department. The character and extent of appropriate regulations to be enforced for any given purpose are within the discretion of the lawmaking power, subject only to organic provisions securing private rights. Compulsory eradication of ticks from cattle by "dipping" the cattle in solutions that destroy the ticks may be an appropriate and effective means of preserving the health and well-being of the cattle; and the due enforcement of reasonable regulations to accomplish such a salutary purpose is within the sovereign

powers of the State, whether exerted as a police, taxation, eminent domain or other governmental power.

All governmental powers of the State are subject to the limitations imposed by the Constitution of the State and to applicable provisions of the Federal Constitution; the organic provisions being designed to secure all individual rights that are consistent with efficient government to conserve the general welfare. Individual rights to life, liberty and property are in law acquired and enjoyed, subject to the exercise of the regulating powers of government; and such rights are not protected by the Constitution from the due exercise of such governing powers. The purpose of constitutional government is to secure individual rights subject to valid regulations enacted in the interest of the public good. Consequently the Constitution does not protect rights which are claimed in violation of valid statutory regulations that are enacted to accomplish governmental purposes; and such statutes are valid where they afford due process and equal protection and do not violate some specific organic provision, though they may in effect deprive individuals of life, liberty and property to accomplish the purposes for which the Constitution was adopted. The governmental authority to regulate by due course of law does not deny to any one the *right* to lawfully protect life, liberty and property. The Constitution secures to "all men" the "inalienable right" to protect individual life, liberty and property as the right may be regulated by due course of law to accomplish the governmental purposes as expressly stated and provided for in the controlling organic provisions.

The State Constitution in its preamble declares that it is established "in order to secure" the "blessings" of "constitutional liberty," and in the Declaration of Rights

ordains that "government is instituted for the protec-
tion, security and benefit of the citizens." As the powers
of government operate upon persons and property, all
personal and property rights are held subject to the due
exercise of the sovereign governmental regulating power,
therefore, considered in connection with the expressed
purposes of the Constitution, the organic provision that
"all men are equal before the law and have certain
inalienable rights among which are those of enjoying and
defending life and liberty, acquiring, possessing and pro-
tecting property, and obtaining safety," does not confer
upon individuals absolute or unlimited rights to life,
liberty or property. The quoted organic provision does
secure property rights against arbitrary and oppressive
governmental invasion, but it does not protect personal
or property rights from a due exercise of the govern-
mental regulating power to which all individual rights
are subject to accomplish the purposes for which the Con-
stitution was established as the controlling law over all
persons. The organic provisions requiring due process
and equal protection of the laws in depriving individuals
of life, liberty or property expressly recognize that the
right to protect life, liberty and property is not absolute,
but that it is subject to restrictions that must necessarily
be imposed by the lawmaking power, "in order to secure
the blessings of constitutional liberty," in "maintaining
public order," to "insure domestic tranquility," and "to
promote the general welfare."

The provisions of the statute relating to the compul-
sory dipping of cattle to avoid the evils of tick infection
are within the regulating powers of the State, to the
exercise of which power property rights are subject; and
the statute itself does not abridge the privileges or
immunities of any citizen or deny to any one due process

or equal protection of the laws. If rights of individuals are violated by arbitrary, unreasonable or illegal action in applying the statute, a remedy is available in due course of legal proceedings.

The court does not take judicial notice of regulations prescribed by the Board. Pierson v. State, Ala. App —, 76 South. Rep. 487-8.

The provisions of the statute under which the arrest was made do not in terms or purpose arbitrarily or illegally invade personal or property rights or delegate legislative powers in violation of the Constitution. Bailey v. Van Pelt, 78 Fla. 337, 82 South. Rep. 789; State v. McCatty, 5 Ala. App. 212, 59 South. Rep. 543; Ferguson v. Starkey, 192 Ala. 471, 68 South. Rep. 348.

The Legislature having all the lawmaking power of the State that is not withheld by the Constitution, may prescribe duties to be performed by officers expressly provided for by the Constitution, in addition to the duties of those officers that are defined in the Constitution, where not forbidden by the organic law; and the Constitution does not withhold from the Legislature the power to prescribe additional duties to be performed by the State Treasurer or others of "the administrative officers of the executive department" that are not inconsistent with their duties as defined by the Constitution; and such duties may be to act as members of boards or commissions in conjunction with other officers who are provided for by statute ,the commissions issued to constitutional officers being sufficient to cover any duties imposed upon them by law. In such cases the incumbent does not "hold or perform the functions of more than one office under the government of this State at the same time," within the meaning and purpose of that quoted provision

of the Constitution. While in defining generally the duties of the State Treasurer, the Constitution does not include therein "such other duties as may be prescribed by law" as is done in the case of the other "administrative officers of the executive department," yet such omission is not an implied limitation upon the power of the Legislature to impose additional administrative duties upon the State Treasurer that are not inconsistent with those stated in the Constitution. The Constitution itself makes the State Treasurer a member of the Board of Commissioners of State Institutions (Sec. 17, Art. IV), and also a member of the State Board of Education (Sec. 3, Art. XII). This indicates that the duties of the State Treasurer defined in Sec. 24, Art. IV, do not exclude other duties that may be imposed by law. When the constitutional provision relating to the duties of the State Treasurer was first adopted (Sec. 4, Art. VII, Const. 1868), that officer was then by statute one of the Trustees of the Internal Improvement Fund of the State, which is a State agency with extensive administrative powers and duties, all of which are conferred by statute. Sec. 2, Chap. 610, Laws of Florida, approved Jan. 18, 1855.

In providing, Section 1, Chapter 7345, Acts of 1917, that "there is hereby created and established a Board to be known and designated as the State Live Stock Sanitary Board, which shall be composed of the Commissioner of Agriculture, the Superintendent of Public Instruction, the State Treasurer, and two other members who shall be appointed by the Governor, the statute merely authorizes the appointment of two officers by the Governor, and imposes duties upon the three State officers who with the two officers appointed constitute the State Board with designated duties. This does not create new offices for the three State officials. It adds

new administrative duties to existing administrative offices. The duties imposed are not inconsistent with the duties defined in the Constitution.

The Constitution provides that certain State officers shall constitute boards for State administrative purposes, and this does not create additional offices for the named officers. It merely adds to the other duties of the officers. The fact that separately the designated officers have different duties and authority does not prevent them from acting conjointly as members of a board having specific statutory duties to perform collectively. Likewise, when a statute provides that stated officers shall constitute a board with administrative functions no new offices are thereby created, but new duties are imposed upon officers already in commission. If constitutional administrative officers may legally constitute a board or act conjointly in performing official functions, no reason is perceived why constitutional officers and statutory officers may not likewise act conjointly pursuant to a statute without making the constitutional officers in effect the holders of two offices in violation of the Constitution. Certainly there is no provision of the Constitution which expressly or by fair implication forbids the lawmaking power to add to the duties of constitutional State administrative officers, even if those duties are to be performed in connection with statutory officers who have no duties other than those to be exercised conjointly with constitutional officers. See Ann. Cas. 1913D 507.

Numerous statutes of the State impose upon State and County officers duties that may be performed by 'the incumbents of other offices that may be created for that purpose. The State Treasurer is a member of the Railroad Assessing Board, of the Pension Board, and other

statutory boards. The State Treasurer is also the sole Insurance Commissioner for the State. Many of the statutory duties of the State Treasurer have no relation to his duties as defined in Section 24 of Article IV of the Constitution; and this legislation runs through many years of unchallenged interpretation of the Constitution by the lawmaking power of the State, which would be persuasive in construction if doubt existed as to the validity of such enactment.

The Sheriff of the county in which the capital is situated, a county officer, provided for by the Constitution, is by statute made the Sheriff of the Supreme Court. Thus by statute a constitutional county officer performs duties that would be appropriate for the incumbent of a State office if it had been created.

The statute here assailed does not purport to establish a uniform system of county government; nor is it a law relating primarily to the governmental powers of a county, therefore Section 24 of Article IV of the Constitution is not violated. The enactment is a general law potentially applicable to all the counties of the State exerting a sovereign power of the State for a general State purpose. See Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533. The local option feature of the statute does not delegate to the counties the power to declare what the law shall be or how it shall operate when it becomes effective, but it enables the counties respectively to determine by an election whether certain provisions of a complete statute shall become operative in the particular counties. This is not an unconstitutional delegation of lawmaking power. See Cotton v. County Com-

missioners, 6 Fla. 610; State *ex rel.* Cheney v. Sammons, 62 Fla. 303, 57 South. Rep. 196; State *ex rel.* Crumpton v. Montgomery, 177 Ala. 212, 59 South. Rep. 294; Railroad Commission of Alabama v. Alabama Great Southern R. Co., 185 Ala. 354, 64 South. Rep. 13; 12 C. J. 866; 6 R. C. L. 166; Coleman v. Board of Education of Emanuel County, 131 Ga. 643, 63 South. Rep. 41; Cain v. Commissioners, 86 N. C. 8; 56 Fla. 617, 32 L. R. A. (N. S.) 639.

Other questions not affecting the validity of the provisions of the statute here involved will not be discussed, as the petitioner is not entitled to have them decided.

Whether the statute serves a State or a county purpose or both, if not authoritatively determined by its enactment, the question does not come within the purview of the issues the petitioner is entitled to have determined.

On the showing made the alleged invalidity of the statutory provisions here involved does not appear, and the judgment discharging the petitioner should be and is reversed.

TAYLOR AND WEST, J. J., concur.

ELLIS, J., dissents.

BROWNE, C. J., not participating.