On Rehearing.
 

 O’NIELL, Chief Justice
 

 (dissenting).
 

 The majority ruling in this case, so far as it forbids the Attorney General to intervene in and take charge of a criminal prosecution, is a reversal of the jurisprudence on the subject. Every member of the court, as then constituted, subscribed to the opinions which are being overruled now. Two members of the court, as now constituted, were not members of the court when the Major case was decided, and one of them was not a member of the court when the other cases were decided. But their predecessors concurred in those decisions, making them unanimous.
 

 The principal error in the majority opinion in this case is in the holding that section 56 of Article VII of the Constitution imposes a limitation upon the authority of the Legislature to confer upon the Attorney General more powers than he was given specifically by that section of the Constitution itself. That section is not a constitutional limitation. On the contrary, in general terms it provides that the Attorney General shall have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all such proceedings, civil or criminal, as the Attorney General may deem it necessary to institute or to prosecute or to intervene in, for the assertion or protection of the rights and interests of the State; and, specifically, it is declared in that section that the Attorney General shall exercise supervision over the several District Attorneys throughout the State and shall perform all other duties imposed upon him by law. The concluding clause in that section, “shall * * * perform all other duties imposed by law”, means that the-Legislature is left free to amplify the authority of the Attorney General, particularly with reference to his supervisory powers over the several District Attorneys throughout the State. That is what we said in the case of State v. Major, 181 La. 822, 160 So. 425, 427, thus:
 

 “The expression ‘and perform all other duties imposed by law1 has reference not only to the duties which were already imposed by law, but also to such appropriate duties as might thereafter be imposed by law. See State v. Cedar Grove Refining Company, 178 La. 810, 152 So. 531, 533, where it was held that the expression ‘as defined by law,’ in the Constitution (art. 6, § 22), did not mean ‘as already defined by law’, but meant as then or thereafter defined by law.”
 

 
 *171
 
 It must be borne in mind — and in fact it is conceded in the majority opinion in this case — that the powers conferred upon the District Attorneys, unlike the powers conferred upon the Attorney General, are conferred not by the Constitution but only by the Legislature, specifically by the articles of the Code of Criminal Procedure, cited in the majority opinion in this case. This freedom of authority of the Legislature to amplify the powers of the Attorney General — and to lessen the powers of the District Attorneys — was recognized by this court unanimously in State v. Major, 181 La. 822, 160 So. 425, and in State ex rel. De Armas v. Platt, Judge, 193 La. 928, 192 So. 659, and in State v. Ardoin (and the seven companion cases), 197 La. 877, 2 So. 2d 633. In fact it is recognized universally that, although the Legislature cannot take away from a public official powers that are given to him by the Constitution, the Legislature may take away from a public official any powers that have been given to him by the Legislature, and may transfer such powers to any other public official whose powers are not expressly limited by the Constitution. That is recognized in the following cases: Cobb v. Parnell, Governor of Arkansas, et al., 183 Ark. 429, 36 S.W.2d 388; Commonwealth ex rel. Bell v. Powell, 249 Pa. 144, loc. cit. 154, 94 A. 746, loc. cit. 749; Whitaker v. Parsons, 80 Fla. 352, loc. cit. 363, 86 So. 247, loc. cit. 251; State ex rel. Knox, Attorney General, v. Board of Supervisors of Grenada County, 141 Miss. 701, 105 So. 541, loc. cit. 546; People ex rel. Gullet v. McCullough, 254 Ill. 9, 98 N.E. 156, loc. cit. pp. 159 and 160, Ann. Cas.1913B, 995; Wall v. Close, Director of Finance, pages 15, 20, 27, 35 [204 La. 345, 371-373, 377-382, 389-392, 401-404, 14 So.2d 19, 28, 30; 31, 34, 38]; 59 C.J. p. 112, § 124.
 

 In Cobb v. Parnell, Governor, 36 S.W.2d at page 389, the Supreme Court of Arkansas stated the rule thus:
 

 “It is a fundamental and universally-recognized canon of construction that the Constitution of this state is not a grant, but a limitation, of power, and, in all cases, where there is not an express or necessarily implied limitation of its power by-the Constitution, the Legislature is supreme; and it is always the presumption that, in the enactment of a law, the power of the Legislature has not been limited and it is properly exercising its inherent authority.”
 

 In Commonwealth ex rel. Bell v. Powell,, 249 Pa. at page 154, 94 A. at page 749, the Supreme Court of Pennsylvania stated the-rule thus:
 

 “Counsel for appellants also contend that section 10 infringes upon the constitutional functions of the auditor general and state treasurer. The answer to this- is that,, while these officers are named in the Constitution, yet their, duties are not therein defined. That was left to the Legislature.. That body did define the duties of these officers, prior to the present Constitution, in the act of March 30, 1811, 5 Sm.L. 228, and it is suggested that, in adopting the present constitution, the continuance of those duties was contemplated. It must be admitted, however, that, as the Legislature originally prescribed those duties, it has power to. alter them, and an act making such altera
 
 *173
 
 tion cannot for that reason be held to be unconstitutional.”
 

 In Whitaker v. Parsons, 80 Fla. at page 363, 86 So. at page 251, the Supreme Court of Florida stated the rule thus:
 

 “The Legislature, having all the lawmaking power of the state that is not withheld by the Constitution, may prescribe duties to'be performed by officers expressly provided for by the Constitution, in addition to the duties of those officers that are defined in the Constitution, where not forbidden by the organic law; and the Constitution does not withhold from the Legislature the power to prescribe additional duties to be performed by the state treasurer, or others of ‘the administrative officers of the executive department,
 
 [5]
 
 that are not inconsistent with their duties as defined by the Constitution”.
 

 In State ex rel. Knox, Attorney General, v. Board of Supervisors of Grenada County, 105 So. at page 546, the Supreme Court of Mississippi stated the rule thus:
 

 “It will be seen from a reading of this section that the Constitution gives the board of supervisors full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the Legislature may prescribe, and shall perform such other duties as may be required by law. The right of the Legislature to control them under proper regulations as to their constitutional jurisdiction is provided for in the Constitution itself. Their other powers and duties are such as the Legislature may confer, or prescribe not violative of the Constitution.”
 

 In People ex rel. Gullett v. McCullough, 98 N.E. at pages 159-161, the Supreme Court of Illinois had this to say on the subject:
 

 ‘.‘The Attorney General is vested with many powers and duties, and these appertain to his office under the Constitution. He cannot be deprived of these common-law functions by the Legislature, but new duties may be imposed.
 

 “ * * * It cannot, however, be maintained that the statutory duties performed by the executive officers when the Constitution was adopted became at that time unchangeable. Section 1 of the Schedule recognized the continuance of all the statutes imposing duties on the executive officers, and the Constitution contains no evidence of an intention that they should be irrepealable. Such statutes continued to be operative as statutes under the new Constitution until changed by the Legislature, but the power of the- Legislature to amend or repeal them was not affected.”
 

 In the very recent case of Wall v. Close, Director of Finance, 203 La. 346, 14 So.2d 19, this court recognized the principle in several instances. On page 15 of the opinion [203 La. 371, 14 So.2d 28], referring to Act No. 111 of 1942, it is said:
 

 “It does not take away from any officer, board, or agency any function or duty conferred by the Constitution itself.”
 

 On page 20 of the opinion [203 La. 379, 14 So.2d 30], referring to the same statute, it is said:
 

 “It does not purport to strip, nor does it in fact strip, any officer of the Executive
 
 *175
 
 Department of the government of any .of the duties and functions conferred upon such officers by the Constitution.”
 

 On page 27 of the opinion [203 La. 390, 14 So.2d 34] it is declared:
 

 “Therefore, since the duties of the Auditor and the Treasurer are fixed by the Legislature, that branch of the State government was within its rights in changing or modifying the duties of those officers, if, in fact, it did so by Act 111 of 1942.”
 

 On page 35 of the opinion [203 La. 402, 14 So.2d 38] it is declared:
 

 “The act transfers to the Department of Finance certain functions of the Printing Board, which had been conferred upon it by the Legislature. .The State Printing Board was not created by the Constitution, but by the Legislature.”
 

 In 59 C.J. 112, § 124, the rule is stated thus:
 

 “In the absence of constitutional restrictions, the duties of a state officer may be increased or diminished at the will of the legislature. But the legislature cannot deprive an officer of the duties imposed upon him by the constitution, as by transferring his duties to another officer.”
 

 It is declared in the majority opinion in this case, on pages 12 and T3, [15 So.2d 10
 
 [1]
 
 ] that if this court adheres to its decisions maintaining that section 56 of Article VII of the Constitution does not impose a limitation upon the supervisory powers of the Attorney General over the District Attorneys throughout the State, the Legislature could confer upon the Attorney General all of the duties and functions that have been conferred by the Legislature upon the District Attorneys, and thus put them out of business, so to speak, — so as to present the spectacle of these officials holding titles and drawing salaries as District Attorneys for six years “without any powers, duties, functions and responsibilities”. I concede that there is no express constitutional limitation to prevent the Legislature from enacting such foolish legislation; but I do not concede that the writers of the Constitution had any reason to fear that 'the Legislature would ever wish to transfer all of the powers of the District Attorneys to the office of the Attorney General. None of us feared such dire consequences when we — unanimously —rendered the several decisions which are being virtually overruled by this decision.
 

 We are not now dealing with the question of constitutionality of that provision in Act No. 24 of the First Extra Session of 1934 which purports to deprive the courts of jurisdiction to curb any abuse of the discretion of the Attorney General in a given case, because the Attorney General does not dispute that the courts have such jurisdiction. In his testimony as a witness in this case, he conceded that, to that extent, the statute should be deemed violative of section 6 of Article I of the Constitution, guaranteeing that the courts shall be open to everyone and that everyone shall have an adequate remedy for any injury done to him. The Attorney General conceded also, in testifying in this case, that
 
 *177
 
 the act of 1934 did not purport to authorize him to supersede or supplant a District Attorney to the extent of taking over all of the functions of his office, — or in such a way as virtually to remove a District Attorney from office temporarily. The Attorney General concedes that such an interpretation of the statute .would be violative of sections 1 and 6 of Article IX of the Constitution, prescribing the causes for which and the method by which a District Attorney is subject to removal from office.
 

 In this case the Attorney General is undertaking merely to supersede the District Attorney in two kinds of proceedings. In the first place, he is undertaking to supersede the District Attorney by intervening in and taking charge of the two criminal cases in which Jerome A. Hayes and his auditors are charged with conspiring to destroy public records and with destroying public records, and a case in which Hayes is charged with slandering the sheriff. In the second place, the Attorney General is undertaking to supersede the District Attorney as the legal adviser of the grand jury in certain investigations or complaints regarding any of the public institutions in the parish, and particularly all audits of and regarding the several offices, departments and institutions mentioned in the second letter addressed to the District Attorney by the Attorney General. For reasons which I shall give hereafter in this opinion I agree that the Attorney General should not supersede the District Attorney as legal adviser of the grand jury in the circumstances of this case, against their protest.
 

 In the case of State v. Major, decided on March 4, 1935, 181 La. 822, 160 So. 425, 426, we had before us for the first time the question of constitutionality of Act No. 24 of the First Extra Session of 1934, so far as it purported to enlarge the authority and powers of the Attorney General in the exercise of his supervision over the District Attorneys throughout the State, and, specifically, his authority to intervene in and take charge of a criminal prosecution. And we held that the statute was not violative of any provision in section 56 of Article VII of the Constitution. The way in which the question of constitutionality of the statute arose is stated in the opinion rendered in that case, thus:
 

 “The question of constitutionality of the statute arose in consequence of the arrest of one A. J. Major, who was employed as an inspector for the supervisor of public accounts. The district attorney filed a bill of information against Major for carrying a concealed weapon. Major claimed that he was employed also as an agent of the bureau of criminal identification and investigation, that he was under assignment to his official duties at the time of his arrest, and was therefore allowed, by a provision in section 12 of Act No. 9, of the First Extra Session of 1934, to carry concealed weapons. Major conferred with an Assistant Attorney General, and he, in turn, notified the district attorney, in writing, that he, the Assistant Attorney General, acting under authority of section 56 of article 7 of the Constitution, and Act No. 24 of the First Extra Session of 1934, amending article 17 of the Code of Crimi
 
 *179
 
 nal Procedure, would relieve the district attorney of further prosecution of-the case against Major. The district attorney replied that he considered Act No. 24 of the First Extra Session of 1934 unconstitutional, and therefore respectfully declined to recognize the authority claimed by the Attorney General, or Assistant Attorney General, to relieve or supersede a district attorney in a criminal prosecution where there was no failure or neglect of duty, or disqualification, on the part of the district attorney. He respectfully invited the Assistant Attorney General to file a formal motion in the criminal district court, to obtain a ruling on the question at issue between them. The Assistant Attorney General filed the motion, and the judge directed the district attorney to show cause why the Assistant Attorney General should not be allowed to relieve and supersede the district attorney in the prosecution of Major. The district attorney pleaded, substantially, as he had answered the letter of the Assistant Attorney General; and, after hearing arguments on both sides of the question, the judge decided that Act No. 24 of the First Extra Session of 1934 was not unconstitutional, and that the Assistant Attorney General should be allowed to relieve and supersede the district attorney in the prosecution of Major.
 

 *****
 

 “The argument of the district attorney is that the authority of the Attorney General or an Assistant Attorney General to relieve or supersede a district attorney is defined in section 56 of article 7 of the Constitution, and is thereby limited to cases where the intervention of the Attorney General or of an Assistant Attorney General is ‘necessary for the assertion or protection of the rights and interests of the State,’ as, for example, where the district attorney fails or neglects, or is disqualified or incompetent, to prosecute the case. [Here the court quoted sec. 56 of art. 7 of the Constitution],
 

 *****
 

 “The expression ‘and perform all other duties imposed by law’ has reference not only to the duties which were already imposed by law, but also to such appropriate duties as might thereafter be imposed byr law. See State v. Cedar Grove Refining Company, 178 La. 810, 152 So. 531, 533, where it was held that the expression ‘as defined by law,’ in the Constitution (art. 6, § 22), did not mean ‘as already defined by law,’ but meant as then or thereafter defined by law.
 

 *****
 

 “It is not necessary to decide now whether an abuse of the discretion which is vested in the Attorney General might be inquired into by the courts. There is no showing of abuse of discretion in this case. The Assistant Attorney General frankly stated that his reason for desiring to relieve and supersede the district attorney was that their opinions were not in accord on the question whether A. J. Major was allowed by law to carry a concealed weapon at the time of his arrest. Whether that was a sufficient or an insufficient reason for the action of the Assistant Attorney General, his action was not arbitrary.”
 

 In affirming the ruling of the Judge of. the Criminal District Court, that Act No.
 
 *181
 

 24
 
 of the First Extra Session of 1934 was not violative of any provision in section 56 of Article VII of the Constitution, we declared in the Major case that under the provisions of that section the Attorney General already had authority to intervene in and take charge of any criminal case, as he might "deem necessary for the assertion or protection of the rights and interests of the State”, and that, to that ■extent, the Attorney General had the right to exercise his power of supervision over the District Attorneys without the aid of Act No. 24 of the First Extra Session of 1934. In that connection we declared that the word “supplant” was added to the words “relieve” and “supersede”. We were mistaken in saying that the word “supplant” was the only word that was added to the words in the Constitution, because in fact the synonyms “relieve” and “supersede” also were new words, added by the statute. That mistake, however, did not control or affect the decision in the Major case, that the power and authority of the Attorney General, under section 56 of Article VII of the Constitution, “to intervene in” any criminal proceeding, as he might deem necessary for the assertion or protection of the rights and interests of the State, gave the attorney general the right to have control — and to take charge — of any case that he might see fit to intervene in.
 

 To say that the Attorney General should not have the right to take charge and have control of a case in which he may intervene, — but should merely share the authority with the District Attorney in such a case — would be not consistent with the supervisory power of the Attorney General over the several District Attorneys throughout the state, — which power is expressly conferred by section 56 of Article VII of the Constitution.
 

 In that connection we must bear in mind that the Attorney General, in this instance, in both of his letters advising the District Attorney that he, the Attorney General, would supersede him in the matters referred to in the letters, declared: “This is to advise you that in accordance with the authority vested in me
 
 by the Constitution
 
 and laws of the State of Louisiana”, et cetera. [The italics are mine.]
 

 On pages 24 and 25 of the majority opinion [15 So.2d 14
 
 [2]
 
 ] in this case is a severe criticism of the opinion rendered in the Major case. The only mistake made in that case, as I have pointed out, was in the statement of fact that the word “supplant” was the only new word that was added in the redundant expression in Act No. 24 of the First Extra Session of 1934, “to relieve, supplant and supersede”. The words “relieve” and “supersede” also were added by the act of 1934, for good measure, apparently, and to make the phraseology seem more vigorous in its intention. The purpose of employing all of these synonyms was to make clear and to amplify the supervisory authority which was given to the Attorney General in section 56 of Article VII of the Constitution; that is, to have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene
 
 *183
 
 in any proceeding, civil or criminal,
 
 as he might deem, necessary
 
 for the assertion or protection of the rights or interests of the State, and to exercise supervision over the several District Attorneys throughout the State, and to perform all other duties imposed upon the Attorney General by law.
 

 The context of the opinion rendered in the Major case shows that the mistake of saying that only one of the three synonyms “relieve”, “supplant”, and “supersede”, was added by Act No. 24 of the First Extra Session of 1934, was a matter of no importance whatever. If the context of the opinion in the Major case is not enough to convince anyone of the lack of importance of the mistake that was made in the opinion in that case, surely the fact that none of the seven members of the court even noticed the mistake when they read and signed the opinion in the Major case ought to be convincing that the error in the opinion had no importance. And this lack of importance is confirmed by the fact that none of the seven justices noticed the mistake when, in May 1941, they all read and signed the opinion in the Ardoin case, — in which the Major case was referred to with approval and at great length. And, if we want “confirmations strong as proofs of Holy Writ”, — that the mistake in the Major case has no such importance as is attributed to it in the majority opinion in the present case, — let us remember that our attention was directed to this mistake in the briefs filed in the present case on February 1, 1943, and it was stressed in the oral argument of the case on that day; and yet the mistake was not considered of sufficient importance to be even mentioned in the majority opinion rendered in this case on March 8, 1943.
 

 I respectfully submit, therefore, that the decision in the Major case is as good authority today as it would be if the court had not been mistaken about the piling up of the synonyms, “relieve”, “supplant”, and “supersede”. And I can see no necessity for magnifying the mistake, as it is magnified in the majority opinion in this case.
 

 The further criticism of the opinion in the Major case, — on pages 24 and 25 of the majority opinion in the present case [15 So.2d 14
 
 [3]
 
 ], — commencing with .the statement, “It was also incorrect to hold that the statute did not attempt to confer judicial functions on the Attorney-General” et cetera, — I respectfully submit, is not justified by a reading of the opinion itself. On that subject the opinion speaks for itself, and has been speaking for itself, with the sanction of every member of this court,, for more than eight years.
 

 And, in that connection, it is said on. page 25 of the majority opinion in the present case [15 So.2d 15
 
 [4]
 
 ], — by way of final criticism of the opinion rendered in: the Major case, — that, while the court stated in that case that it was not necessary then to decide whether the court might inquire into an alleged abuse of discretion, on the part of the Attorney General, nevertheless the court “did make the inquiry and held that there was no showing of abuse-
 
 *185
 
 of the discretion in the case”. There was no inconsistency in what the court Said on that subject in the Major case. What the court said — or attempted to make plain— was that it was not necessary to decide in the Major case whether the court might substitute its judgment for the discretion vested in the Attorney General in a case where there was some showing of abuse of his discretion, — because there was no such showing in the Major case. Perhaps some other writer might have used the term “no vestige”, or “no pretense”, instead of “no showing”, of abuse of discretion. But, as a matter of style, I still think that the term “no showing” was well chosen. I repeat now the way in which we expressed our opinion on that subject in the Major case, — viz:
 

 “It is not necessary to decide now whether an abuse of the discretion which, is vested in the Attorney General might be inquired into by the courts. There is no showing of abuse of discretion in this case. The Assistant Attorney General frankly stated that his reason for desiring to relieve and supersede the district attorney was that their opinions were not in accord on the question whether A. J. Major was allowed by law to carry a concealed weapon at the time of his arrest. Whether that was a sufficient or .an insufficient reason for the action of the Assistant Attorney General, his action was not arbitrary.”
 

 On pages 25, 26 and 27 of the majority opinion in the present case [15 So.2d 15
 
 [5]
 
 ] is an analysis of the opinion which was concurred in unanimously in the eight consolidated cases entitled State v. Ardoin, 197 La. 877, 2 So.2d 633, decided originally on April 28, and on rehearing on May 26, 1941. The quotation from that opinion, on page 27 of the majority opinion in the present case [15 So.2d 15
 
 [6]
 
 ], is not complete; and, by reason of its being incomplete, it conveys the wrong impression that, if the District Attorney, instead of the defendants in the eight cases, had complained of the extent to which the Attorney General had relieved and superseded the District Attorney, our ruling might have been different. But the sentence which immediately follows the quotation in the majority opinion in this case, — and which is omitted from the quotation in the majority opinion in this case, — declares that the result would have been the same if the District Attorney, instead of the defendants, in the Ardoin case, had complained of the extent to which the Attorney General relieved and superseded the District Attorney. In the majority opinion p. 27 in this case [15 So.2d 15
 
 [7]
 
 ] the author quotes only this much of the opinion on the subject in the Ardoin case, — viz:
 

 “We doubt that any one of the defendants in these cases should be concerned with the Attorney General’s having served as legal advisor of the grand jury in relation to the case of any other of the defendants. The only one who might have been concerned with the extent to which the Attorney General served as legal advisor of the grand jury is the District Attorney.”
 

 The sentence which immediately follows that quotation, — in the same paragraph and
 
 *187
 
 forming a continuation of what was quoted, —is this: “If he had complained the result would have been the same as when the District Attorney made the same complaint in the St. Bernard case and in the Plaque-mine case.” In the St. Bernard case and in the Plaquemine case, — as we explained in the Ardoin case, — the complaint of the District Attorney was rejected on the ground that section 56 of Article VII of the Constitution and article 23 of the Code of Criminal Procedure gave the Attorney General authority to relieve and supersede the District Attorney. Here is what we said about the St. Bernard case and the Plaquemine case, in the Ardoin cases:
 

 “In two cases of later date [later than the case of State ex rel de Armas et al. v. Platt, Judge, 193 La. 928, 192 So. 659], .presenting exactly the same issues and arguments that are made in the present [Ardoin] cases, we decided unanimously that the Attorney General had the right, under authority of section 56 of Article VII •of the Constitution and Article 23 of the Code of Criminal Procedure, to relieve and supersede the District Attorney as legal advisor of the grand jury when requested so to do by the grand jury. We refer to the case entitled In re Request of the St. Bernard Parish Grand Jury for the Supersession of the District Attorney by the Attorney General, No. 36,117 of the •docket of this court, and the case entitled In re Request of the Plaquemine Parish Grand Jury for the Supersession of the District Attorney by the Attorney General, • No. 36,127 of the docket of this court. These cases are not reported officially because they came up on the petition of the District Attorney for writs of certiorari to review a ruling of the judge of the district court and we refused to grant even a rule to show cause. The reason which we gave in each case, for refusing to grant a writ or a rule to show cause, was that the ruling complained of, in which the judge of the district court affirmed the right of the Attorney General to relieve and supersede the District Attorney, was correct; and in support of the ruling we cited Section 56 of Article VII of the Constitution and Article 23 of the Code of Criminal Procedure — thus : Writs refused, ruling correct. Sec. 56, Art. 7 of the Constitution of 1921, and Art. 23 Code of Criminal Procedure.’ The first of these two cases was filed on February 11 and was disposed of on February 13, and the second case was filed on February 13 and was disposed of on February 14, 1941. The record in thé eight cases which we are now considering was filed in this court on February 12, 1941; and we had in mind when we made the ruling in the St. Bernard case and in the Plaquemine case that the same issues which we were deciding then would, be tendered again when these eight cases would come up for argument on appeal. There is therefore nothing new in the arguments made in these cases. Ordinarily, a ruling by which this court refuses to grant a supervisory writ to review a judgment or ruling of another court — even when this court states as its reason for the refusal that the judgment or ruling complained of is correct — is not deemed to be as good authority as a precedent as if this court had decided the case after granting a writ, or had decided the case on appeal.
 
 *189
 
 But the circumstances in which we made the ruling in the St. Bernard case and in the Plaquemine case make the ruling very-persuasive if not controlling in the present cases. In the case of Carrere v. City of New Orleans, 162 La. 981, loc.cit. 1015, 111 So. 393, loc.cit. 405, we pointed out that, since the Constitution has required, in Article VII, Section 2, that an appellate court shall state its reason or reasons, when it refuses to grant a supervisory writ or writ of review, now when the Supreme Court refuses to grant a writ and declares its reason to be that the judgment or ruling complained of is correct, ‘it may be said that the Supreme Court affirms or at least approves the decision’ or ruling complained of. Twice, therefore, we affirmed or at least approved the ruling of the judge of the district court in St. Bernard and in Plaquemine parish that- the Attorney General had the right to relieve and supersede the District Attorney as legal advisor of the grand jury, over the protest of the District Attorney, when the Attorney General was requested by the grand jury so to relieve and supersede the District Attorney.”
 

 On page 28 of the majority opinion in the present case [15 So.2d 16
 
 [8]
 
 ] it is said that our ruling in the St. Bernard case and in the Plaquemine case “simply followed the misstatement and erroneous views exA pressed in the Major case”. That is a mistake, because, as I have pointed out, we did not base our ruling in the St. Bernard case or in the Plaquemine case upon Act No. 24 of the First Extra Session of 1934, or upon the interpretation given to the act in the Major case, but based our ruling exclusively upon section 56 of Article VII of the Constitution and upon article 23 of the Code of Criminal Procedure. I quote again — in full — the ruling made in the St. Bernard case and in the Plaquemine case,, —thus: “Writs refused, ruling correct. Sec. 56, Art.
 
 7
 
 of the Constitution of 1921, and Art. 23, Code of -Criminal Procedure.” [197 La. 877, 2 So.2d 637], That was a simple declaration that section 56 of Article VII of the Constitution, and article 23 of the Code of Criminal Procedure, were sufficient authority for the Attorney General to relieve and supersede the District Attorney, without regard for Act No. 24 of the First Extra Session of 1934. And, surely, that declaration had nothing whatever to do with any “misstatement and erroneous views expressed in the Major case”.
 

 On pages 27 and 28 of the majority opinion in the present case, [15 So.2d. 16
 
 [9]
 
 ] the pronouncement which were made on this subject in the De Armas case are referred to as if they were not to be regarded as maintaining that the Attorney General might relieve or supersede a District Attorney under authority of Act No. 24 of the First Extra Session of 1934. But these pronouncements in the De Armascase were quoted with approval, and as authority, unanimously, in the Ardoin case,— thus:
 

 “The right of the Attorney General to> relieve and supersede a District Attorney as legal advisor of the grand jury, on the
 
 *191
 
 request of the grand jury, was recognized in the case of State ex rel. De Armas et al. v. Platt, Judge, 193 La. 928, 192 So. 659. The question in that casé was whether the conduct of two grand jurors, who persisted in reading to the judge — after he had forbidden them to read — a criticism of the district attorney and a request for the judge to designate an outside attorney to relieve and supersede the district attorney as legal advisor of the grand jury, was a sufficient cause for the judge to remove the two offending grand jurors. In deciding the question it was not out of order for the court to observe — and the court did observe — that if there was sufficient cause for the District Attorney to be relieved and superseded as legal advisor of the grand jury the latter should have requested the Attorney General to relieve and supersede the District Attorney as legal advisor of the grand jury. On pages 990 and 991 of 193 La. and on page 679 of 192 So., is this declaration:
 

 “ ‘If the District Attorney and his staff were guilty of such misconduct and neglect of duty, which did not constitute a crime, nor a ground for their removal or impeachment, they might be superseded by the Attorney-General under the provisions of Act No. 24 of 1934, 1st Ex.Sess.’
 

 “Again, on page 993 of 193 La. and page 680 of 192 So. is this declaration:
 

 “ ‘These charges, if proved to be true, might be sufficient reasons to justify the Attorney-General in superseding the District Attorney.’ ”
 

 We have declared, therefore, in four instances, — and with the utmost deliberation, — that the Attorney General has authority to relieve and supersede a District Attorney as adviser of the grand jury if the grand jury requests the Attorney General to relieve and supersede the District Attorney as adviser of the grand jury. But we have never decided, or had occasion, to decide, that the Attorney General may relieve and supersede a District Attorney as adviser of the grand jury against the protest of the grand jury, as in this case. My opinion is that the judgment in this case is correct so far as it forbids the Attorney General to relieve or supersede the District Attorney as adviser of the grand jury in the matters set forth in the second letter addressed to the District Attorney by the Attorney General. The reason for this conclusion is twofold. In the first place, it would result in an impasse if the court should undertake to compel the grand jurors to accept the Attorney General as their legal adviser in matters in which they refuse to accept his advice. That is the practical aspect of the case. In the second place, it is not the duty of the grand jury to make a sweeping investigation of all of the public offices, boards, commissions and institutions enumerated in the letter of the Attorney General proposing to relieve and supersede the District Attorney as adviser of the grand jury in such matters. Of all of the institutions which the Attorney General proposed to have the grand jury investigate, there is only one concerning which the grand jury might have the right to make a report to the district judge; that is the Florida Parishes Hospital. In Article 210 of the Code of Criminal Procedure it is declared that the grand jury shall act
 
 *193
 
 upon any complaint that comes to its attention in only one of three ways, namely, first, by returning a true bill, second, by returning not a true bill, or, third, by pretermitting entirely the matter investigated, —that is to say, by taking no action whatever concerning the matter. In the closing paragraph of that article it is declared:
 

 “If the evidence presented to the grand jury does not justify finding a true bill, the grand jury shall limit its action to returning not a true bill or pretermitting all action, and the grand jury shall not, in any case whatever, make any report on any matter submitted to it for investigation, except in the manner hereinabove indicated, as the grand jury is an accusatory body and not a censor of public morals. It shall make no reports to the court other than the return of presentment or indictment, except as specifically provided in Article 211 hereof.”
 

 And in Article 211 it is declared:
 

 “Each grand jury shall inspect every prison, place of detention, asylum and hospital within the parish, and make report to the district judge of how the prisoners and inmates of every such institution are treated, and every such report shall state the number of prisoners and inmates in every such public institution, and the costs of maintenance, and shall state the length of time that each prisoner awaiting trial, at the time of skid report, shall have been so held for trial.”
 

 Those two articles of the Code of Criminal Procedure plainly impose a limitation upon the functions of the grand jury as an inquisitorial body. It was so declared in the De Armas case. And as to that declaration there was no dissent in the De Armas case. There is no reason why twelve grand jurors should spend their time aiding the supervisor of public funds in the proposed investigations or audits of the several public institutions in the Parish of Tangipahoa, as proposed in the second notification given by the Attorney General to the District Attorney. Any accusation that might result from any such audit or investigation may be made as well by way of a bill of information, filed by the Attorney General, as by way of an indictment by the grand jury.
 

 My conclusion is that, so far as the judgment appealed from enjoins the Attorney General from relieving or superseding the District Attorney in the three criminal cases, namely, (1) the case in which the Supervisor of Public Funds and his auditors are accused of conspiring to destroy public records, (2) the case in which they are accused of destroying public records, and (3) the case in which the supervisor is accused of slandering the sheriff, the judgment should be reversed; and, so far as the judgment enjoins the Attorney General from acting as legal adviser of the grand jury in the proposed investigation of the public institutions referred to in. the second letter of the Attorney General, the judgment should be affirmed.
 

 [1]
 

 204 La. 137.
 

 [2]
 

 204 La. 150.
 

 [3]
 

 204 La. 150.
 

 [4]
 

 204 La. 152.
 

 [5]
 

 204 La. 152.
 

 [6]
 

 204 La. 152.
 

 [7]
 

 204 La. 154.
 

 [8]
 

 204 La. 155.
 

 [9]
 

 204 La. 155.