394 So.2d 110 (1981)
The BATH CLUB, INC., Appellant,
v.
DADE COUNTY et al., Appellees.
No. 57613.
Supreme Court of Florida.
January 29, 1981.
*111 Dan Paul, Franklin G. Burt and Cloyce L. Mangas, Jr. of Paul & Thomson, Miami, for appellant.
Robert A. Ginsburg, Dade County Atty., and Vicki Jay, Asst. County Atty., Miami, Steven A. Schultz, Dade County Property Appraisal Adjustment Bd., Miami, Jim Smith, Atty. Gen., William D. Townsend, Asst. Atty. Gen., Tallahassee, for appellees.
ENGLAND, Justice.
The Bath Club here appeals a trial court order which rejects its attempt to reduce ad valorem real property tax assessments on the Club's Miami Beach land for the calendar years 1976, 1977 and 1978. The court's dismissal of the Club's assessment challenge was correct in all regards, and we affirm. An expansive explanation of this proceeding is unnecessary, as a resolution of the main controversy for the most part requires no more than an application of routine legal principles to the peculiar facts presented.
The Club brought a trial court action to contest its real property tax assessments for the three years in question after Dade County's Property Appraisal Adjustment Board had rejected its administrative challenge to assessments set by the county's property appraiser (previously known as a "tax assessor"). After presentation of the Club's evidence in a non-jury trial, the trial judge dismissed the Club's suit and rejected all constitutional challenges to the relevant statutes. This appeal followed, properly raising only three issues.[1]
1. The Club asserts that these tax assessments are based on speculative and conjectural considerations, rather than the factors enumerated in section 193.011, Florida Statutes (1975), to govern ad valorem tax assessments. Principal among the factors alleged to be improperly considered is a zoning ordinance which would allow a higher and better use for the Club's property than its present, non-profit recreational activities, as restricted by its charter and a recent, publicly-filed "Declaration of Restrictions." Suffice it to say on this issue that our view of the record evidence of the trial persuades us that the Club wholly failed to prove, as was its burden in order to prevail at trial,[2] that the property appraiser did not take into account all relevant assessment considerations set out in section 193.011. The Club essentially disagrees with the appraiser as to the weight to be accorded its charter restrictions and the actual use of its property, suggesting that the assessment should be controlled by a unilaterally-approved, recently-adopted, self-serving Declaration of Restrictions. The Club's disagreement on the weight to be accorded use restrictions and zoning is simply not a sufficient basis to upset the *112 appraiser's determination. Straughn v. Tuck, 354 So.2d 368 (Fla. 1977).
2. The Club next asserts that the composition of Dade County's administrative tax equalization body  the Property Appraisal Adjustment Board  is constitutionally infirm, in light of the dual officeholding prohibition of article II, section 5(a) of Florida's constitution. That section states in relevant part that "[n]o person shall hold at the same time more than one office under the government of the state and the counties and municipalities therein... ."
Section 194.015, Florida Statutes (Supp. 1976), creates the Board and provides that it shall be composed of three county commissioners and two school board members.[3] County commissioners and school board members are constitutional officers which article II, section 5(a) bars from dual officeholding. The Club contends that there exists an inherent conflict of institutional interest between the Board's statutory duty to grant impartial hearings on tax assessments, and its members' predisposition in their capacities as county commissioners and school board members to secure adequate revenues for their respective agencies' public budgets.
Article II, section 5(a) was manifestly fashioned to ensure that multiple state, county, and municipal[4] offices will not be held by the same person. Underlying this objective is the concern that a conflict of interest will arise by dual officeholding whenever the respective duties of office are inconsistent. Where additional duties are assigned to constitutional officers and there is no inconsistency between these new and pre-existing duties, however, the dual officeholding prohibition does not preclude such an assignment. In such cases, newlyassigned duties are viewed merely as an addition to existing responsibilities. State ex rel. Gibbs v. Gordon, 138 Fla. 312, 189 So. 437 (1939); State ex rel. Landis v. Reardon, 114 Fla. 755, 154 So. 868 (1934); Whitaker v. Parsons, 80 Fla. 352, 86 So. 247 (1920). See also State v. Florida State Turnpike Authority, 80 So.2d 337 (Fla. 1955).[5]
There is no conflict between the duty of county commissioners and school board members to levy ad valorem taxes on real property[6] and the limited function of Board members to review and correct individual assessments made by the county tax appraiser.[7] In Stiles v. Brown, 182 So.2d 612 (Fla. 1966), we discussed the function of the "board of equalization" (now the Board) in reviewing the action of the tax assessor (now property appraiser):
The purpose of tax equalization under F.S. § 193.25, F.S.A. [(now codified as section 194.015)], is the adjustment of tax valuations so that the share of taxes imposed *113 will be justly proportioned to the value of the properties subject to taxation. Equalization under § 193.25 is designed to correct possible errors made by the tax assessor in the valuation and assessment of the taxes imposed. Through the process of equalization under said § 193.25 the taxpayer is provided with a hearing on the question of the equality of his assessment with assessments against other property owners.
Id. at 614-15 (emphasis in original).
Membership on the Board, as mandated by section 194.015, simply provides county commissioners and school board members with an additional administrative duty. See Whitaker v. Parsons; State v. Florida State Turnpike Authority.[8]
An examination of the history of the structure for ad valorem tax appeals reveals that the functional and nomenclatural roots of the Board can be traced to the county commissions' original duties. In 1895, the legislature provided that exclusive responsibility for hearing taxpayer appeals from assessments was in the county commissions, sitting as "boards of equalization."[9] These Boards remained substantially unaltered until 1969, when the legislature enacted section 194.015 to change the name of the tribunal to the Board of Tax Adjustment and to diversify its membership to include school board members.[10] In 1976, the Board was given its present designation.[11]
As a final point concerning Boards, we reject as having neither merit nor record support the Club's suggestion that the Board's ability to provide aggrieved taxpayers with an impartial and independent review of a tax assessment is compromised simply because revenue generated from ad valorem taxes is disbursed, in part, to the county commission and to the school board.[12] Public officials are presumed to perform their duties in a proper and lawful manner. Boardman v. Esteva, 323 So.2d 259 (Fla. 1975), appeal dismissed, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976); Hunter v. Carmichael, 133 So.2d 584 (Fla.2d DCA 1961).
3. Lastly, the Club asserts that section 194.032(4), Florida Statutes (Supp. 1976), which allows the Board to appoint special masters to take testimony and make recommendations on which "the board may act upon without further hearing ..." denies procedural due process. The Club argues that the Board is merely a "rubber stamp" of the special masters; another contention made without record support. In any event, "due process is met if one adequate method of judicial review of the orders of administrative agencies is set up *114 and [,] ... such method may be made exclusive by statute." Johnson v. McNeill, 151 Fla. 606, 610, 10 So.2d 143, 145 (1942); Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974). Viewing the statute as a whole, we see that taxpayers desiring to challenge their ad valorem real property tax assessments are afforded not only notice and an opportunity to be heard at an administrative level but an absolute right to a trial de novo in the circuit court.[13] Section 194.032(4) obviously provides taxpayers with procedural due process.
The order of the trial court, dismissing the Club's complaint and rejecting constitutional attacks on various statutes, is affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] We decline to consider several matters raised by the Club for the first time on appeal. Century Village, Inc. v. Wellington, E, F, K, L, H, J, M, & G, Condominium Ass'n, 361 So.2d 128 (Fla. 1978).
[2] § 194.032(6)(c), Fla. Stat. (Supp. 1976).
[3] At the time the Club brought its first trial court action challenging the appraiser's 1976 assessment, the Board's predecessor  the Board of Tax Adjustment  was in operation. § 194.015, Fla. Stat. (1975). The two boards are virtually identical in their roles in the tax assessment process.
[4] The current dual officeholding prohibition includes municipal officers. Its predecessor under the 1885 constitution had been construed to exclude such personnel from coverage. Commentary to Art. II, § 5(a), Fla. Const. (1968), appearing at 25A Fla. Stat. Ann. 505-06 (1970).
[5] The predecessor to this provision under the constitution of 1885, article XVI, section 15, is substantially unchanged, so that interpretations of the former provision are persuasive for our analysis here. Barndollar v. Sunset Realty Corp., 379 So.2d 1278, 1280 n. 1 (Fla. 1979); Gray v. Bryant, 125 So.2d 846 (Fla. 1960).
[6] See art. VII, § 9(a), Fla. Const.
[7] Board proceedings are governed by rules prescribed by the Department of Revenue. § 195.027(1), Fla. Stat. (1975). Florida Administrative Code rule 12D-10.03 provides:

Powers, Authority, Duties and Functions of Property Appraisal Adjustment Board.
(1) The Board has no power to fix the original valuation of property for ad valorem tax purposes or to grant an exemption not authorized by law and the Board is bound by the same standards as the county appraiser in determining values and the granting of exemptions. The Board has no power to grant relief either by adjustment of the value of a property or by the granting of an exemption on the basis of hardship of a particular taxpayer. The Board in determining the valuation of a specific property shall not consider the ultimate amount of tax required.
[8] In Whitaker this Court concluded that the state treasurer's membership in the "State Livestock Sanitary Board" was not a public office within the purview of the dual officeholding prohibition of article XVI, section 15, Florida Constitution (1885):

The fact that separately the designated officers have different duties and authority does not prevent them from acting conjointly as members of a board having specific statutory duties to perform collectively. Likewise, when a statute provides that stated officers shall constitute a board with administrative functions, no new officers are thereby created, but new duties are imposed upon officers already in commission.
80 Fla. at 365, 86 So. at 252 (emphasis added). In the State Turnpike Authority case, we held that a statute requiring a member of the State Road Department, as designated by the Governor, to serve on the State Turnpike Authority did not violate the dual officeholding prohibition of the 1885 constitution. In so doing, this Court took notice of the relationship between the State Road Department and the Turnpike Authority, and concluded that as a practical matter the subject appointment constituted the imposition of additional duties which served "to create a liaison between a board charged with general supervision of the highway systems and one charged with construction of a turnpike... ." 80 So.2d at 344.
[9] Ch. 4322, Laws of Fla. (1895).
[10] Ch. 69-140, § 2, Laws of Fla. (amending § 193.26, Fla. Stat. (1967)).
[11] Ch. 76-133, § 6, Laws of Fla. (amending § 194.015, Fla. Stat. (1975)).
[12] Courts frequently render decisions involving matters of taxation, yet no one would seriously contend that the courts are incapable of rendering fair decisions in such cases simply because the judicial branch is financially supported by tax revenues.
[13] The Club contends that a circuit court trial de novo is costly and time consuming. Procedural due process is not abridged, however, by normally burdensome adjuncts of court proceedings.