James E. Moore Attorney for Fort Walton Beach Area Bridge Authority
QUESTION:
May a person simultaneously serve as a member of the Fort Walton Beach Area Bridge Authority and as a member of the State Board of Community Colleges without violating the prohibition against dual officeholding contained in s. 5(a), Art. II, State Const.?
SUMMARY:
The dual officeholding prohibition of s. 5(a), Art. II, State Const., prohibits a person from serving simultaneously as a member of both the Fort Walton Beach Area Bridge Authority and the State Board of Community Colleges.
Section 5(a), Art. II, State Const., provides in part:
 No person shall hold at the same time more than one office under the government of the state and the counties and municipalities therein, except that . . . any officer may be a member of a . . . statutory body having only advisory powers.
Thus, s. 5(a) of Art. II, prohibits a person from contemporaneously holding more than one "office" under the government of the state and the counties and municipalities therein.[1]
However, the Constitution does not define the terms "office" or "officer" for its purposes. The Florida Supreme Court has stated that "[t]he term `office' implies a delegation of a portion of the sovereign power t, and the possession of it by , the person filling the office, while an employment does not comprehend a delegation of any part of the sovereign authority."[2]
In accordance with the specific provision in the Constitution, this office has previously concluded that statutory bodies having only advisory powers are excepted from application of the dual officeholding prohibition.[3] In AGO 86-105 it was determined that a local planning agency which was established by the town code to prepare the comprehensive plan and to recommend the plan or elements or portions thereof to the town council for adoption did not fall within the scope of the constitutional prohibition since the powers of the agency were information-gathering and advisory only. As is stated in the opinion, "[s]uch agency does not appear to be vested with any authority to exercise the sovereign power of the state, the possession and exercise of such power being an identifying characteristic of an `office.'"
In contrast to the advisory powers of the local planning agency in AGO 86-105, the State Board of Community Colleges appears to have extensive powers not limited to those of an advisory nature. Section 240.305, F.S., provides in part that:
There is established a State Board of Community Colleges of the Department of Education with the necessary powers to exercise responsibility for statewide leadership in overseeing and coordinating the individually governed public community colleges. . . .
The board is responsible for establishing and developing rules and policies for the operation and maintenance of the state community college system in a coordinated, efficient, and effective manner.[4]
The guidelines relating to salary and fringe benefit policies for community college administrators, including community college presidents, are to be developed and adopted by the board.[5]
The State Board of Community Colleges is responsible for reviewing and administering the state program of support for the community college system.[6] In this capacity the board review and approves all budgets and recommended budget amendments in the community college system.[7]
Inasmuch as the State Board of Community Colleges exercises a portion of the sovereign power in overseeing and coordinating the operation of the community college system, I am of the opinion that membership on the State Board of Community Colleges must be deemed a state "office" for purposes of s. 5(a), Art. II, State Const.
Having concluded that membership on the State Board of Community Colleges constitutes an "office," it is necessary to determine whether a member of the Fort Walton Beach Area Bridge Authority is an "officer" for purposes of s. 5(a), Art. II, State Const.
The Fort Walton Beach Area Bridge Authority was created by Ch. 90-412, Laws of Florida, "for the purpose of planning, construction, operating, and maintaining a bridge or bridges transversing Choctawhatchee Bay or Santa Rosa Sound, or both, and access roads to the bridge or bridges."[8] The authority was created as a dependent special district within Okaloosa County.[9]
The constitutional prohibition contained in s. 5(a), Art. II, State Const., applies to state, county and municipal officers. This office has, on a number of occasions, concluded that the dual officeholding prohibition does not apply to special district officers.[10]
However, in AGO 84-90 this office considered whether a member of a county health facilities authority created under Part III, Ch.154, F.S., was an officer. The authority was created by the county as a public body corporate and politic after the county determined that a need existed for the authority to function in the county. This office concluded that, "since the county's governing body created the authority . . . appoints the members of the authority created for the county . . . may remove any of the members so appointed . . . and may abolish it at any time . . . the Volusia County Health Facilities Authority is, for the purposes of s. 5(a), Art. II, State Const., an agency or instrumentality of the county." The opinion went on to note that the authority and its members exercised sovereign powers and concluded that, for dual officeholding purposes, the members of the county health facilities authority were officers of the county.
The Fort Walton Beach Area Bridge Authority is made up of seven members. Three of the members of the authority are appointed by the Governor and the other four members are county appointees.[11]
No less than four of the members of the authority must be residents of a geographical area "extending west from East Pass Bridge to the boundary line between Santa Rosa County and Okaloosa county, and north to the Eglin Reservation."[12]
The involvement of Okaloosa county in the administrative affairs of the authority is extensive. As noted above, the Fort Walton Beach Area Bridge Authority was created as a dependent special district within the county.[13] Pursuant to s.200.001(8)(d), F.S., the millage of a dependent special district must be added to that of the governing body to which it is dependent, and may not exceed the maximum millage applicable to such governing body.
The county commission is also charged with approving the authority's annual budget. Pursuant to provisions of Ch. 90-412, Laws of Florida, the authority must prepare an annual budget and submit that budget to the Board of County Commissioners of Okaloosa County for approval.[14] In this regard,
[t]he authority, in each fiscal year, shall prepare an annual budget for operating revenue accounts and operating expense accounts and such other accounts as the board of county commissioners prescribes, for its operations in the ensuing fiscal year and . . . the chairman of the authority shall submit such budget to the board of county commissioners. The fiscal year for the authority is concurrent with the fiscal year of Okaloosa County . . . .[15]
In addition, the act requires that when a vacancy in office occurs in one of the seats to which the county appoints, that vacancy must be filled by the Board of County commissioners of Okaloosa County.[16] Based on this relationship of the county to the authority, I must conclude that the authority is an instrumentality of the county for dual officeholding purposes.
An examination of the powers of the authority leaves little question that a member of the authority is an officer. The authority possesses the power to:
(4) Adopt rules for the regulation of its affairs and the conduct of its business and rules for the operation of the system, and enforce and administer all such rules;
* * *
(7) Plan for and study the feasibility of constructing, operating, and maintaining a bridge or bridges tranversing Choctawhatchee Bay or Santa Rosa Sound, or both, and access roads to such bridge or bridges, including studying the environmental and economic feasibility of such bridge or bridges and access roads, and such other transportation facilities that become part of the system.
* * *
(8) Construct, operate, and maintain the system;
* * *
(10) Construct, acquire, repair, and operate any public development or project covered in this act, or coordinate any of the foregoing among other governmental agencies;
(11) Acquire, construct, reconstruct, equip, improve, maintain, and repair the system or any portion thereof within its area of operation; (12) Fix, charge, and collect fees, tolls, rents, and charges for the use of the system, any part thereof, and any facilities furnished thereby, and of any property under its control, and pledge such revenue to the payment of revenue bonds issued by the authority;
* * *
(15) Exercise the power of eminent domain pursuant to chapters 73 and 74, Florida Statutes[. . . .][17]
In light of the powers exercised by the Fort Walton Beach Area Bridge Authority and a determination that the authority is an instrumentality or agency of the county, I must conclude that members of the authority are county officers for purposes of the dual officeholding prohibition.[18]
Thus, a person may not simultaneously serve as a member of the bridge authority and as a member of the State Board of Community Colleges without violating the dual officeholding prohibition contained in s. 5(a), Art II, State Const.
[1] See, Bath Club, Inc. v. Dade County,394 So.2d 110, 112 (Fla. 1981)
[2] See also, AGO 69-2 (and authorizes cited therein) noting that s. 5(a), Art. II, makes no distinction between legally appointed and legally elected officers; AGO 80-97.
[3] See, AGO 86-105 (local planning agency whose function is information gathering and advisory only falls within exception to dual officeholding prohibition); AGO 77-74 (powers exercised by members of the Florida Advisory Council on Intergovernmental Relations are advisory and, as such, excluded from the prohibition of s. 5[a], Art. II, State Const.); AGO 73-288 (municipal zoning board having only advisory powers may serve as county tax collector); AGO 72-179 (legislator may serve as member of ad hoc charter revision commission appointed by municipal governing body to serve in purely advisory capacity to study and recommend changes to municipal charter).
[4] Section 240.311(2), F.S.
[5] Section 240.311(3)(m), F.S.
[6] Section 240.311(5), F.S.
[7] Section 240.311(5)(a), F.S.
[8] Section 1, CH., 90-412, Laws of Florida.
[9] Id.
[10] See, e.g., AGO 86-55 (member of governing board of Big Cypress Basin, a subdistrict of the South Florida Water Management district may serve as mayor of a municipality); AGO 85-24 (mayor may serve on community redevelopment district established by general law), and AGO 84-72 (member of district school board may serve on county performing arts center authority).
[11] Section 3(2), Ch. 90-412, Laws of Florida.
[12] Section 3(1), Ch. 90-412, Laws of Florida.
[13] Supra, footnote 8.
[14] Section 6(1), Ch. 90-412, Laws of Florida.
[15] Section 6(2)(b), Ch. 90-412, Laws of Florida.
[16] Section 3(4)(a), Ch. 90-412, Laws of Florida.
[17] Section 4, Ch. 90-412, Laws of Florida.
[18] I would note that, in a limited sense, Ch. 90-412, Laws of Florida, currently contains a dual officeholding prohibition. Section 3(4)(b), provides as follows:
If a member of the authority becomes a constitutional officer of a county, the member ceases to be a member of the authority as of such time, and the Governor shall appoint another member to serve the remaining term of office. A resignation from the constitutional office does not operate to restore such person to membership on the authority.